# RECORD IMPOUNDED

NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-1008-14T4

NEW JERSEY DIVISION OF
CHILD PROTECTION
AND PERMANENCY,

    Plaintiff-Respondent,

v.

N.T.,

    Defendant-Appellant,

and

A.K. and J.A.V.,

    Defendants.

_____

IN THE MATTER OF

N.A.T. AND J.V., minors.

_____

| APPROVED FOR PUBLICATION |
| :---: |
| **May 31, 2016** |
| **APPELLATE DIVISION** |

Submitted February 2, 2016 – Decided May 31, 2016

Before Judges Reisner, Hoffman and Leone.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Burlington County, Docket No. FN-03-101-14.

Joseph E. Krakora, Public Defender, attorney for appellant (Amy Vasquez, Designated Counsel, on the brief).

John J. Hoffman, Acting Attorney General, attorney for respondent (Melissa H. Raksa, Assistant Attorney General, of counsel;

Hannah Edman, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minors N.A.T. and J.V. (Todd Wilson, Designated Counsel, on the brief).

The opinion of the court was delivered by

LEONE, J.A.D.

Defendant N.T. (Stepfather) appeals the trial court's April 2, 2014 finding that he abused or neglected his stepson J.V. by allowing J.V. to witness him perpetrate domestic violence against J.V.'s mother, defendant A.K. (Mother). Over Stepfather's hearsay objections, the Division of Child Protection and Permanency (Division) based its case entirely on: (1) out-of-court statements by Mother and J.V., largely contained in a report prepared by a Division caseworker and a psychological evaluation of J.V.; and (2) the diagnoses and opinions in the evaluation by the psychologist, who did not testify. In finding harm to J.V., the trial court relied on the psychologist's diagnoses and opinions.

Stepfather argues that Mother's statements in the report and the evaluation, and the psychologist's evaluation itself, were inadmissible hearsay. Thus, we must address the admissibility of reports prepared by Division staff personnel,

or affiliated medical, psychiatric, or psychological consultants (Division reports).

To be admissible as a business record of the Division, a Division report must meet the requirements of N.J.R.E. 803(c)(6), whether the report is offered under N.J.S.A. 9:6-8.46(a)(3), Rule 5:12-4(d), or In re Guardianship of Cope, 106 N.J. Super. 336 (App. Div. 1969). If a Division report is admissible under N.J.R.E. 803(c)(6) and meets the requirements of N.J.S.A. 9:6-8.46(a)(3), Rule 5:12-4(d), or Cope, the court may consider the statements in the report that were made to the author by Division staff personnel, or affiliated medical, psychiatric, or psychological consultants, if those statements were made based on their own first-hand factual observations, at a time reasonably contemporaneous to the facts they relate, and in the usual course of their duties with the Division. However, whether the Division report is offered under N.J.R.E. 803(c)(6), N.J.S.A. 9:6-8.46(a)(3), Rule 5:12-4(d), or Cope, statements in the report made by any other person are inadmissible hearsay, unless they qualify under another hearsay exception as required by N.J.R.E. 805. Expert diagnoses and opinions in a Division report are inadmissible hearsay, unless the trial court specifically finds they are trustworthy under the criteria in N.J.R.E. 808, including that they are not too complex for

admission without the expert testifying subject to cross-examination.

Here, Mother's statements were admissible against Stepfather because they qualified under the hearsay exception for statements against interest. N.J.R.E. 803(c)(25). However, the trial court did not make the findings required by N.J.R.E. 808, and the non-testifying psychologist's complex diagnoses and opinions were inadmissible hearsay. Because the psychologist's diagnoses and opinions were the linchpin of the trial court's opinion, and because the Division's other evidence of harm to J.V. was less than overwhelming, we vacate and remand for a new fact-finding hearing.

I.

Mother gave birth to J.V. in 2006.[1] Mother subsequently married Stepfather, and in 2013 they had a son, N.A.T. They divorced before the fact-finding hearing.

In 2013, plaintiff, the Division of Child Protection and Permanency (Division), filed a complaint alleging abuse or neglect of both J.V. and N.A.T. by Mother and Stepfather. However, the Division ultimately sought a fact-finding only as to Stepfather regarding J.V.

---

[1] J.V.'s biological father, defendant J.A.V., was believed to reside in Florida, and did not appear in these proceedings.

At the fact-finding hearing, the Division called only one witness, Division intake worker Kevin Ginsberg, who testified as follows.  Ginsberg became involved for a referral that was received on July 23, 2013.[2]  Division personnel went to the home and "we interviewed all parties."  Ginsberg testified that Stepfather and Mother denied there was any current domestic violence, but "admitted there had been some issues in the past."  However, Ginsberg testified that J.V. "did tell me that his daddy [Stepfather] did hold a mommy [sic] [knife] up to mommy."  The seven-year-old J.V. could not tell when that happened, saying both "20 days ago" and "20 years ago," so the Division personnel left the home after Mother and Stepfather agreed to get therapy.[3]

A second referral was received from Mother on July 27, 2013.  Over a hearsay objection, Ginsberg testified Mother "reported" the following: Mother had lied to the Division during the previous interview because she was afraid to speak freely in front of Stepfather.  Since then, he told her that if she left

---

[2] Ginsberg testified that the July 23 referral occurred after J.V. told a teacher that "his dad had held a knife up to his mother."  After a hearsay objection, the Division requested that this be considered as background information, not for its truth.

[3] On cross-examination, Ginsberg admitted that the knife incident likely had been raised in prior referrals which the Division had deemed "unfounded" and "not substantiated."

he would burn the house down. She later left the home with J.V., because they were afraid of Stepfather. Stepfather had assaulted Mother, bruised her legs, choked her, punched her in the face, and held her face in the couch. He had put a knife to her neck and head. He originally committed these acts in front of the children, but more recently he told the children to go to their rooms during these acts. Mother obtained a temporary restraining order (TRO).

The Division received a third referral on September 23, 2013.[4] Ginsberg testified that a police officer told him Stepfather was allowed back in the home.[5] Ginsberg went to the home with the officer and knocked on the front door. A neighbor yelled to Ginsberg and the officer that Stepfather had just fled out the back door and was running down the street with N.A.T. in his arms. Ginsberg observed J.V. walking towards the home from the street. J.V. said he had been walking around the neighborhood with no one watching him.

---

[4] The referral occurred when J.V. told school personnel that Stepfather was back in the home. After a hearsay objection, the Division requested the testimony be considered as background information, not for its truth.

[5] The Division became aware that the TRO had been dismissed and replaced with civil restraints that did not restrict Stepfather from being in the home.

Over a hearsay objection, the trial court admitted Exhibit P-1, an Investigation Summary (Summary) written by Ginsberg. The Summary included an interview by another Division worker, ("buddy interview") of J.V. on July 27. In the interview, J.V. stated as follows. J.V. was scared of his "dad" because a "couple of days ago" J.V. "saw daddy put a knife to mommy's throat." Stepfather hit Mother, making J.V. "sad and scared." J.V. did not feel safe at home and wanted his "daddy to go away." The Summary also included a buddy interview of Mother on July 27, in which Mother stated that Stepfather put a knife to her throat in front of the children "about 3 days ago," and that the domestic violence had been going on for some time.

Over a hearsay objection, the trial court admitted Exhibit P-2, the Psychological Evaluation (Evaluation) of J.V. by Dr. Jennifer L. Perry, a licensed psychologist. The Evaluation related that Mother stated the following to Dr. Perry. There had been over 100 occurrences of domestic violence in her three-year relationship with Stepfather, and J.V. had witnessed much of the domestic violence in the home. There had been "an incident involving a knife approximately two years ago," and J.V. was confused about when it occurred. J.V. told his grandmother he had nightmares about Stepfather putting the knife to Mother's throat. J.V. had behavioral issues, including

aggression, which had started before Mother began her relationship with Stepfather.

The Evaluation also reported that J.V. stated the following to Dr. Perry. Stepfather often yelled, once grabbed Mother's arm, and "hurt mommy with a knife." Mother "was so lucky she's still alive." J.V. forgot about his nightmares. He drew a picture, explaining: "My dad is trying to get a knife on mommy. And I sawed the whole thing. He tried to hurt her."

The Evaluation related Dr. Perry's findings that J.V. had witnessed and been exposed to significant domestic violence between Mother and Stepfather, that J.V. evidenced symptoms often seen in children who had experienced trauma, and that J.V. had post-traumatic stress disorder (PTSD). Dr. Perry also diagnosed J.V. with Attention-Deficit/Hyperactivity Disorder (ADHD), and provisionally with Oppositional Defiant Disorder (ODD), but added that such problems "can result from exposure to traumatic experiences and frequently overlap with symptoms of PTSD, especially when the exposure to violence is chronic and affects all family members."

In its oral opinion, the trial court found that Stepfather had committed domestic violence against Mother. The court found this caused actual harm to J.V., based on Dr. Perry's report:

> [H]ere we have proof of [the detrimental effect upon the child] clearly from the

report of Dr. Perry. She diagnoses the child with post-traumatic stress disorder which she connects to the child's witnessing of domestic violence in the home . . . . And she says that this is a common experience with children who have seen domestic violence in their home and have been exposed to it. And she very specifically relates the . . . post-traumatic stress disorder to his witnessing the domestic violence.

In its April 2, 2014 order, the trial court found that Stepfather abused or neglected J.V. On September 12, 2014, the court terminated the Title Nine litigation. Stepfather then appealed.

## II.

Before considering Stepfather's claims, some background is necessary. N.J.S.A. 9:6-8.21(c)(4) defines an "[a]bused or neglected child" to include

a child whose physical, mental, or emotional condition has been impaired or is in imminent danger of becoming impaired as the result of the failure of his parent or guardian, as herein defined, to exercise a minimum degree of care . . . (b) in providing the child with proper supervision or guardianship, by unreasonably inflicting or allowing to be inflicted harm, or substantial risk thereof[.]

Our Legislature has declared that "children, even when they are not themselves physically assaulted, suffer deep and lasting emotional effects from exposure to domestic violence." N.J.S.A. 2C:25-18. This legislative declaration "does not and can not

constitutionally be held to substitute for the fact-finding of the family court." N.J. Div. of Youth & Family Servs. v. S.S., 372 N.J. Super. 13, 25 (App. Div. 2004), certif. denied, 182 N.J. 426 (2005). However, abuse or neglect can be shown where the Division presents "credible evidence that professionals in the field accept the general proposition that domestic violence in the home harms children and that harm had occurred in this family." N.J. Div. of Youth & Family Servs. v. I.H.C., 415 N.J. Super. 551, 584-85 (App. Div. 2010). In I.H.C., the Division presented live expert testimony which "was supported by the factual evidence, especially the manifestation of abuse or neglect in the child['s] behavior and development," including "aggression" displayed by the child. Id. at 563, 586.

## III.

We first reject Stepfather's constitutional challenge. Stepfather claims the trial court's admission of hearsay evidence violated the Confrontation Clause of the Sixth Amendment to the Constitution, and ran afoul of Crawford v. Washington, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004). We disagree. The Sixth Amendment grants the right to confrontation "[i]n all criminal prosecutions." U.S. Const. amend VI. Thus, "[t]he Sixth Amendment right of confrontation is not applicable to civil proceedings." N.J. Div. of Youth &

Family Servs. v. V.K., 236 N.J. Super. 243, 253 (App. Div. 1989), certif. denied, 121 N.J. 614 (1990). Similarly, "Crawford's hearsay protections derive from the Confrontation Clause of the Sixth Amendment to the United States Constitution, which pertains to 'criminal prosecutions,' not to civil trials." See N.J. Div. of Youth & Family Servs. v. M.C. III, 405 N.J. Super. 24, 38 (App. Div. 2008), rev'd on other grounds, 201 N.J. 328 (2010). A Division "worker acting in a proper civil role does not trigger considerations that are unique to criminal trials, including the Confrontation Clause" and Crawford. State v. Buda, 195 N.J. 278, 307 (2008).

## IV.

We next address Stepfather's claim that the admission of hearsay violated the Rules of Evidence. "The general rule as to the admission or exclusion of evidence is that '[c]onsiderable latitude is afforded a trial court in determining whether to admit evidence, and that determination will be reversed only if it constitutes an abuse of discretion.'" State v. Kuropchak, 221 N.J. 368, 385 (2015) (citation omitted). "Under that standard, an appellate court should not substitute its own judgment for that of the trial court, unless 'the trial court's ruling "was so wide of the mark that a manifest denial of

justice resulted."'"  Ibid. (citations omitted).  We must hew to that standard of review.

### A.

Stepfather claims that the trial court's admission of the Evaluation and the Summary violated N.J.R.E. 802 because they contain inadmissible hearsay.  Preliminarily, we review the standards for admitting such Division reports.

Since our 1969 decision in In re Guardianship of Cope, 106 N.J. Super. 336 (App. Div. 1969), courts have stated that "the Division may submit into evidence 'reports by [Division] staff personnel . . . prepared from their own first-hand knowledge of the case, at a time reasonably contemporaneous with the facts they relate, and in the usual course of their duties with the [Division].'"  N.J. Div. of Youth & Family Servs. v. A.W., 103 N.J. 591, 595 n.1 (1986) (emphasis added) (quoting Cope, supra, 106 N.J. Super. at 343).  "Such reports containing a worker's first-hand knowledge of the case are treated by the courts as 'supply[ing] a reasonably high degree of reliability as to the accuracy of the facts contained therein.'"  In re Herrmann, 192 N.J. 19, 38 n.6 (2007) (quoting A.W., supra, 103 N.J. at 595 n.1 (quoting Cope, supra, 106 N.J. Super. at 344)).

In Cope, we concluded that

> in cases of this type the [Division] should
> be permitted to submit into evidence,

> pursuant to <u>Evidence Rules</u> 63(13) and 62(5),
> reports by [Division] staff personnel (or
> affiliated medical, psychiatric, or
> psychological consultants), prepared from
> their own first-hand knowledge of the case,
> at a time reasonably contemporaneous with
> the facts they relate, and in the usual
> course of their duties with the [Division].
>
> [<u>Cope</u>, <u>supra</u>, 106 <u>N.J. Super.</u> at 343.]

The <u>Evidence Rules</u> cited in <u>Cope</u> are the predecessors of <u>N.J.R.E.</u> 803(c)(6) and 801(d). "<u>N.J.R.E.</u> 803(c)(6) is the business-records exception to the hearsay rule and 801(d) defines the word business to 'include[] every kind of business, institution, association, profession, occupation and calling, whether or not conducted for profit, and also includes activities of governmental agencies.'" <u>M.C. III</u>, <u>supra</u>, 201 <u>N.J.</u> at 347 (quoting <u>N.J.R.E.</u> 801(d)).

In 1974, in its act creating <u>N.J.S.A.</u> 9:6-8.21 through -8.73 (Title 9), the Legislature included <u>N.J.S.A.</u> 9:6-8.46(a)(3), which provides that in any hearing under Title 9,

> <u>any writing</u>, record or photograph, whether
> in the form of an entry in a book or
> otherwise, <u>made as a memorandum or record of</u>
> <u>any condition, act, transaction, occurrence</u>
> <u>or event relating to a child in an abuse or</u>
> <u>neglect proceeding</u> of any hospital or any
> other public or private institution or
> agency <u>shall be admissible in evidence in</u>
> <u>proof of that condition, act, transaction,</u>
> <u>occurrence or event, if the judge finds that</u>
> <u>it was made in the regular course of the</u>
> <u>business of any hospital or any other public</u>
> <u>or private institution or agency, and that</u>

it was in the regular course of such business to make it, at the time of the condition, act, transaction, occurrence or event, or within a reasonable time thereafter, shall be prima facie evidence of the facts contained in such certification. A certification by someone other than the head of the hospital or agency shall be accompanied by a photocopy of a delegation of authority signed by both the head of the hospital or agency and by such other employees. All other circumstances of the making of the memorandum, record or photograph, including lack of personal knowledge of the making, may be proved to affect its weight, but they shall not affect its admissibility[.]

[N.J.S.A. 9:6-8.46(a)(3) (emphasis added).]

"Although [N.J.S.A. 9:6-8.46(a)(3)'s] phrase 'in the regular course of business' is not defined in Title 9, our courts have suggested that the phrase should be interpreted as identical to the meaning of that phrase in the business-records exception to the hearsay rule." M.C. III, supra, 201 N.J. at 346. Thus, such a report is admissible under N.J.S.A. 9:6-8.46(a)(3) "provided it meets certain admissibility requirements akin to the business records exception." N.J. Div. of Youth & Family Servs. v. P.W.R., 205 N.J. 17, 32 (2011).

In 1975, our Supreme Court adopted Rule 5:7A-4(d) (now Rule 5:12-4(d)) "to implement the 1974 revision of Chapter 4C of Title 30." See R. 5:7A-4(d) (1976); Pressler, Current N.J. Court Rules, comment on R. 5:7A-1 to -7 (1976). As amended,

Rule 5:12-4(d) provides: "The Division of Child Protection and Permanency (the 'Division') shall be permitted to submit into evidence, pursuant to N.J.R.E. 803(c)(6) and 801(d), reports by staff personnel or professional consultants.  Conclusions drawn from the facts stated therein shall be treated as prima facie evidence, subject to rebuttal."  R. 5:12-4(d).

Thus, as under Cope and N.J.S.A. 9:6-8.46(a)(3), "a report offered into evidence under Rule 5:12-4(d) may be admitted only if it satisfies the prerequisites for admissibility set forth in N.J.R.E. 803(c)(6)."  N.J. Div. of Youth & Family Servs. v. B.M., 413 N.J. Super. 118, 131 (App. Div. 2010).  N.J.R.E. 803(c)(6) provides:

> A statement contained in a writing or other record of acts, events, conditions, and, subject to Rule 808, opinions or diagnoses, made at or near the time of observation by a person with actual knowledge or from information supplied by such a person, if the writing or other record was made in the regular course of business and it was the regular practice of that business to make it, unless the sources of information or the method, purpose or circumstances of preparation indicate that it is not trustworthy.

Accordingly, to be admissible as a business record of the Division, a Division report must be shown to meet the requirements of N.J.R.E. 803(c)(6), whether the report is offered under N.J.S.A. 9:6-8.46(a)(3), Rule 5:12-4(d), or Cope.

A-1008-14T4

N.J.S.A. 9:6-8.46(a)(3), Rule 5:12-4(d), and Cope provide that certain evidence is "prima facie evidence," subject to rebuttal. N.J.S.A. 9:6-8.46(a)(3); Rule 5:12-4(d); Cope, supra, 106 N.J. Super. at 344. As set forth below, they also authorize the admission of certain statements contained within an admissible Division report. However, they do not otherwise remove the need for a Division report to satisfy the hearsay rules.

B.

We first address the Summary. Ginsberg testified that he wrote the Summary with personal knowledge of the described events and in the normal course of business of the Division, and that it was the normal course of business for the Division to make such records. The trial court admitted the Summary based on the Division's citation to N.J.S.A. 9:6-8.46(a)(3).

The legislative history of Title 9 is silent regarding N.J.S.A. 9:6-8.46(a)(3), but we believe the Legislature enacted it to address the concerns we expressed in Cope just a few years earlier:

> [A] rule requiring all [Division] personnel having contact with a particular case to give live testimony on all the matters within their personal knowledge would cause an intolerable disruption in the operation of the [Division].
>
> As a result, it becomes necessary to allow certain evidence to be produced in a hearsay form[.]

[Cope, supra, 106 N.J. Super. at 343.]

Similarly, Rule 5:12-4(d) "recognizes the Division's need to secure the services of a range of professionals when investigating a claim of child abuse." M.C. III, supra, 201 N.J. at 348.

Therefore, if a Division report is admissible under N.J.R.E. 803(c)(6), and meets the standards of N.J.S.A. 9:6-8.46(a)(3), Rule 5:12-4(d), or Cope, those authorities allow the admission of the evidence we described in Cope, namely factual statements in the report made to the author by Division "staff personnel (or affiliated medical, psychiatric, or psychological consultants), [made based on] their own first-hand knowledge of the case, at a time reasonably contemporaneous with the facts they relate, and in the usual course of their duties with the" Division. Cope, supra, 106 N.J. Super. at 343.[6]

---

[6] We do not suggest that Rule 5:12-4(d) itself authorizes admission. We have refused "to construe a court rule such as Rule 5:12-4(d), which was adopted without participation by the Legislature in accordance with the Evidence Act of 1960, as having been intended to adopt an additional exception to the rule against hearsay." B.M., supra, 413 N.J. Super. at 132; see also N.J.S.A. 2A:84A-33 to -44.

Thus, we agree that the Summary was admissible to the extent that it related the first-hand observations of Ginsberg and other Division workers.[7]

However, the Summary also related statements made to Ginsberg and other Division workers by non-Division personnel, particularly J.V. and Mother. Cope stated that, "[a]s to oral or written reports from neighbors, the police or other persons, the usual rules governing admissibility of hearsay evidence should apply." Cope, supra, 106 N.J. Super. at 344. Those hearsay rules provide that "[a] statement within the scope of an exception to Rule 802 shall not be inadmissible on the ground that it includes a statement made by another declarant which is offered to prove the truth of its contents if the included statement itself meets the requirements of an exception to Rule 802." N.J.R.E. 805.

As a result, even if a document "is admissible as a record of regularly conducted activity," statements by others reported by the author of the document "are 'hearsay-within-hearsay,' each level of which . . . requires a separate basis for admission into evidence." Estate of Hanges v. Metro. Prop. & Cas. Ins. Co., 202 N.J. 369, 375 n.1 (2010). A "hearsay

---

[7] Stepfather has not disputed that the Summary was prepared reasonably contemporaneously.

statement[] embedded in Division records" from persons other than Division personnel and affiliated professional consultants "may not be admitted unless it satisfies an exception to the hearsay rule." N.J. Div. of Child Prot. & Permanency v. B.O., 438 N.J. Super. 373, 385 (App. Div. 2014). The trial court must "fully assess the evidential issues inherent in the Division's submission of documents which include statements by others than Division workers." N.J. Div. of Child Prot. & Permanency v. R.W., 438 N.J. Super. 462, 468 (App. Div. 2014).

Accordingly, whether a Division report is offered under N.J.R.E. 803(c)(6), N.J.S.A. 9:6-8.46(a)(3), Rule 5:12-4(d), or Cope, statements in the report by persons other than Division staff personnel and affiliated professional consultants who are reporting their factual observations are inadmissible hearsay unless they qualify under another hearsay exception as required by N.J.R.E. 805.

The trial court properly admitted J.V.'s statements to the buddy interviewer in the Summary under N.J.S.A. 9:6-8.46(a)(4). That subsection provides that "previous statements made by the child relating to any allegations of abuse or neglect shall be admissible in evidence; provided, however, that no such statement, if uncorroborated, shall be sufficient to make a fact finding of abuse or neglect." Ibid.

The trial court admitted Mother's statements to the buddy interviewer in the Summary, because they were against her interest as a party to the litigation.[8]  The court found Mother's statements were "against her interest because she is reporting to the Division that there's domestic violence in her home for which the children could be removed from her."  The court noted that Mother "lied to the caseworker about whether it was occurring so it's against her interest now to admit it."

Statements against interest are addressed in N.J.R.E. 803(c)(25), which excludes from the rule barring hearsay

> [a] statement which was at the time of its making so far contrary to the declarant's pecuniary, proprietary, or social interest, or so far tended to subject declarant to civil or criminal liability, or to render invalid declarant's claim against another, that a reasonable person in declarant's position would not have made the statement unless the person believed it to be true.

"The statement-against-interest exception is based on the theory that, by human nature, individuals will neither assert,

---

[8]  The Division also argued that Mother's statements were admissible as an admission of a party-opponent under N.J.R.E. 803(b).  However, that rule permits the admission of "[a] statement offered against a party" only if it is "the party's own statement," adopted or authorized by that party, or made by that party's agent or co-conspirator.  N.J.R.E. 803(b).  Mother's accusations that Stepfather committed domestic violence fell into none of those categories.  See N.J. Div. of Youth & Family Servs. v. H.P., 424 N.J. Super. 210, 227 (App. Div. 2011) ("any statements made by defendant's wife could not constitute defendant's admissions").

concede, nor admit to facts that would affect them unfavorably. Consequently, statements that so disserve the declarant are deemed inherently trustworthy and reliable." State v. White, 158 N.J. 230, 238 (1999) (citations omitted). "The analysis of this issue must initially distinguish statements that exculpate the declarant from liability by shifting blame to another — such statements are inherently self-serving and presumptively unreliable." Id. at 239.

Mother's statement that she lied to the Division when she claimed there was no current domestic violence was a direct statement against interest. Mother's remaining statements were indirectly against her interest. Her statements detailing the domestic violence could help prove that she had lied to the Division. Those statements, and her statements that the children had witnessed the domestic violence, also could help prove an allegation by the Division that Mother abused or neglected the children by allowing them to be exposed to domestic violence. See, e.g., N.M., supra, 438 N.J. Super. at 420-21; S.S., supra, 372 N.J. Super. at 15.

Of course, while Mother's statements were indirectly against her interests, they could also be viewed as serving her interests, as they directly accused Stepfather of committing domestic violence against Mother in front of the children.

Moreover, Stepfather contends Mother, who was in divorce proceedings against Stepfather, had motivations to accuse Stepfather of domestic violence.

"The extent to which statements or portions of statements that are not explicitly incriminating may fall within the statement-against-interest hearsay exception . . . has long been debated."  White, supra, 158 N.J. at 238-39 (citing Williamson v. United States, 512 U.S. 594, 611-12, 114 S. Ct. 2431, 2440-41, 129 L. Ed. 2d 476, 490-91 (1994) (Kennedy, J., concurring)). Our Supreme Court has decided that "statements that only indirectly inculpate the declarant . . . can be admissible as statements against interest" if, "as a related part of a self-inculpatory statement, they strengthen or bolster the incriminatory effect of the declarant's exposure to criminal liability."  White, supra, 158 N.J. at 239, 244.[9]  "Evidence that [a statement was] possibly tainted by an impure motive appropriately bears only on its value."  State v. Abrams, 140 N.J. Super. 232, 236 (App. Div. 1976), aff'd o.b., 72 N.J. 342 (1977).  Moreover, there is "no rule that eviscerates the character of a statement against penal interest and denies

---

[9] Cf. Williamson, supra, 512 U.S. at 600-01, 114 S. Ct. at 2435, 129 L. Ed. 2d at 483 (holding that the federal statements-against-interest exception "does not allow admission of non-self-inculpatory statements, even if they are made within a broader narrative that is generally self-inculpatory").

admission of the statement because it is a mixture of exculpatory and incriminatory statements." <u>State v. Weaver</u>, 219 <u>N.J.</u> 131, 158-59 (2014).

The admissibility of statements against interest raises "questions addressed in the first instance to the trial court's sound discretion." <u>State v. Nevius</u>, 426 <u>N.J. Super.</u> 379, 392 (App. Div. 2012), <u>certif. denied</u>, 213 <u>N.J.</u> 568 (2013). Here, we cannot say that the trial court abused its discretion in admitting Mother's statements, which corroborated J.V.'s statements. However, the concerns raised above can affect the credibility and weight of such out-of-court statements.

### C.

We next address the Psychological Evaluation. The trial court admitted the Evaluation under <u>N.J.S.A.</u> 9:6-8.46(a)(3) because it was accompanied by a certification from Dr. Perry's employee, who stated that the records were made in the regular course of business, that it was the regular course of business to make said records, and that the records "were made at the time of the condition and/or occurrences reported therein or within a reasonable time thereafter and accurately reflect the condition and/or occurrence." The court noted the Evaluation was "from someone who is normally used by the Division."

We agree that the employee's certification showed the Evaluation was admissible as a business record under <u>N.J.R.E.</u> 803(c)(6). Thus, Dr. Perry's factual observations in the Evaluation were not inadmissible hearsay. Moreover, the statements by J.V. and Mother recorded in the Evaluation were admissible for the same reasons as their statements in the Summary.

However, Dr. Perry's diagnoses and opinions were inadmissible hearsay. <u>N.J.R.E.</u> 803(c)(6) provides that "opinions or diagnoses" within business records are admissible "subject to <u>Rule</u> 808." <u>N.J.R.E.</u> 808 provides:

> Expert opinion which is included in an admissible hearsay statement shall be excluded if the declarant has not been produced as a witness unless the trial judge finds that the circumstances involved in rendering the opinion, including the motive, duty, and interest of the declarant, whether litigation was contemplated by the declarant, the complexity of the subject matter, and the likelihood of accuracy of the opinion, tend to establish its trustworthiness.

"Therefore, when the expert is not produced as a witness, the rule requires the exclusion of his or her expert opinion, even if contained in a business record, unless the trial judge makes specific findings regarding trustworthiness." <u>N.J. Div. of Youth & Family Servs. v. M.G.</u>, 427 <u>N.J. Super.</u> 154, 174 (App. Div. 2012) (citing <u>State v. Matulewicz</u>, 101 <u>N.J.</u> 27, 30 (1985)).

Here, the trial court failed to make the required specific findings.

In any event, "[a]n expert medical opinion contained in a report is generally inadmissible under [N.J.R.E. 808's] test because of the complexity of the analysis involved in arriving at the opinion and the consequent need for the other party to have an opportunity to cross-examine the expert." B.M., supra, 413 N.J. Super. at 130; see also State v. Michaels, 219 N.J. 1, 35, cert. denied, __ U.S. __, 135 S. Ct. 761, 190 L. Ed. 2d 635 (2014). Similarly, psychological evaluations generally "entail[] the exercise of subjective judgment rather than a straightforward, simple diagnosis based upon objective criteria or one upon which reasonable professionals could not differ." M.G., supra, 427 N.J. Super. at 174; see In re Commitment of G.G.N., 372 N.J. Super. 42, 56 (App. Div. 2004) (excluding an evaluation of mental state because it is among the most "complex diagnoses"); Liptak v. Rite Aid, Inc., 289 N.J. Super. 199, 221-22 (App. Div. 1996) (excluding a complex diagnosis concerning psychological impact).

Such subjective judgment and complexity were evident in Dr. Perry's diagnosis that J.V. had PTSD, and her opinion that J.V.'s symptoms and his problems with ADHD and ODD could have resulted from exposure to traumatic experiences like domestic

25

violence. "These circumstances militated against a finding that the expert opinion contained in the expert report was sufficiently trustworthy to be admitted without the expert appearing and being subject to cross-examination." M.G., supra, 427 N.J. Super. at 175. "It was, therefore, an abuse of discretion to admit the reports into evidence over defendant's objection." Ibid.

The Division cites New Jersey Division of Youth and Family Services v. I.Y.A., 400 N.J. Super. 77, 90-91 (App. Div. 2008), which repeated language from Cope that a report from the Division's "affiliated medical, psychiatric, or psychological consultants" is admissible and their "conclusion" may be received if it meets certain requirements. Cope, supra, 106 N.J. Super. at 343-44. However, Cope's requirements are not the only requirements. Since our decision in Cope, our Supreme Court in Matulewicz established additional requirements for the admission of expert diagnoses and opinions within business records, and those requirements were codified in N.J.R.E. 808. See State v. Miller, 170 N.J. 417, 428 n.1 (2002); James v. Ruiz, 440 N.J. Super. 45, 63 (App. Div. 2015); 1991 Supreme Court Committee Report, "Analysis of Significant Rule Changes," 129 N.J.L.J. 1, 6 (Oct. 10, 1991). N.J.R.E. 808 is incorporated

in N.J.R.E. 803(c)(6), which in turn has been incorporated into N.J.S.A. 9:6-8.46(a)(3) and Rule 5:12-4(d).

Thus, whether a Division report is offered under N.J.R.E. 803(c)(6), N.J.S.A. 9:6-8.46(a)(3), Rule 5:12-4(d), or Cope, expert opinions and diagnoses in the report are inadmissible hearsay unless the trial court specifically finds they are trustworthy under the criteria in N.J.R.E. 808, including that they are not too complex for admission without the expert testifying subject to cross-examination. Because the trial court made no such finding, and because Dr. Perry's diagnosis and opinion in the Evaluation are complex, admitting them over Stepfather's hearsay objection was "wide of the mark." Kuropchak, supra, 221 N.J. at 385.[10]

Accordingly, it was error to admit that hearsay evidence. Of course, a party is free to waive objection to the admission of hearsay evidence. In some cases, parties may have no reason to question the accuracy of such hearsay, or may make "a strategic decision to try the case based on the documents, instead of possibly facing a witness's direct testimony." M.C. III, supra, 201 N.J. at 342. But where, as here, a party

---

[10] Because we exclude Dr. Perry's expert opinion on hearsay grounds, we need not address Stepfather's complaint that Dr. Perry was never qualified as an expert at the fact-finding hearing.

objects to the admission of hearsay in Division reports, trial courts must follow the evidentiary rules as discussed in this opinion.

D.

We next consider the Division's argument that admitting Dr. Perry's diagnoses and opinions in the Evaluation was harmless error. We reject that argument, because Dr. Perry's diagnoses and opinions were central to the trial court's finding of abuse or neglect.

The trial court expressly relied on Dr. Perry's diagnosis that J.V. had PTSD, and her opinion that J.V.'s PTSD and other behavioral symptoms were connected to J.V.'s witnessing domestic violence. Dr. Perry's diagnoses and opinions led the court to conclude that Stepfather had "allow[ed] to be inflicted harm" on J.V. and that J.V.'s "physical, mental, or emotional condition has been impaired." N.J.S.A. 9:6-8.21(c)(4).

Thus, the trial court apparently "ascribed almost determinative significance to [Dr. Perry's] opinion, which went to the heart of the case." Neno v. Clinton, 167 N.J. 573, 587 (2001). A hearsay error mandates reversal where it appears "'the error led the [factfinder] to a result it otherwise might not have reached.'" Id. at 586 (citation omitted). Moreover, overruling the hearsay objection prevented Dr. Perry's diagnoses

28

and opinions from being tested by cross-examination. Thus, their improper admission constituted a manifest denial of justice and was "'clearly capable of producing an unjust result,' requiring reversal." Id. at 587 (quoting R. 2:10-2).

We cannot "take judicial notice of the fact that domestic violence begets emotional distress or other psychic injury in child witnesses." S.S., supra, 372 N.J. Super. at 25. "[S]uch harm 'cannot be presumed in the absence of evidence of its existence or potential.'" N.M., supra, 438 N.J. Super. at 427 (quoting S.S., supra, 372 N.J. Super. at 28). "[T]he act of allowing a child to witness domestic violence does not equate to abuse or neglect of the child in the absence of additional proofs." I.H.C., supra, 415 N.J. Super. at 584.

Here, the statements of J.V. and Mother that J.V. was sad, scared, and felt unsafe are not sufficiently strong or reliable evidence to render harmless the improper admission of the psychologist's hearsay opinions, on which the judge placed such heavy reliance. Moreover, the statements of Mother and J.V. differed regarding whether J.V. had nightmares about the knife incident, and when the knife incident occurred. Further, Mother stated that J.V.'s behavioral problems and "outbursts of aggression" started before Mother's relationship with Stepfather began.

In addition, the reliability of the remaining evidence is hardly ironclad, given the potential inaccuracy of a seven-year-old's statements, <u>N.J. Div. of Youth & Family Servs. v. N.S.</u>, 412 <u>N.J. Super.</u> 593, 623 (App. Div. 2010), Mother's alleged motive to accuse Stepfather, <u>see</u> <u>State v. Provoid</u>, 110 <u>N.J. Super.</u> 547, 555-56 (App. Div. 1970), and the fact that their statements were "'double' (sometimes 'triple') hearsay" untested by cross-examination, <u>Cope</u>, <u>supra</u>, 106 <u>N.J. Super.</u> at 344. Under all the circumstances, the erroneous admission of Dr. Perry's diagnoses and opinions was prejudicial. Accordingly, a new fact-finding hearing is required.

V.

Finally, we address Stepfather's contention that the Division presented insufficient evidence to support the trial court's finding of abuse or neglect, thus precluding a remand for a re-hearing of the issue. We disagree.

"We have a strictly limited standard of review from the fact-findings of the Family Part judge." <u>I.H.C.</u>, <u>supra</u>, 415 <u>N.J. Super.</u> at 577. A reviewing court will not disturb a family court's abuse or neglect findings as long as they are "supported by adequate, substantial, and credible evidence in the record." <u>N.J. Div. of Youth & Family Servs. v. G.L.</u>, 191 <u>N.J.</u> 596, 605 (2007). "Only when the trial court's conclusions are so

'clearly mistaken' or 'wide of the mark' should an appellate court intervene and make its own findings to ensure that there is not a denial of justice." N.J. Div. of Youth & Family Servs. v. E.P., 196 N.J. 88, 104 (2008) (quoting G.L., supra, 191 N.J. at 605); see generally State v. Johnson, 42 N.J. 146, 162 (1964).

"The scope of our review in a non-jury case is to decide whether the findings made could reasonably have been reached on substantial credible evidence present in the record when considering the proofs as a whole, giving due regard to the opportunity of the trial judge to determine credibility." N.J. Div. of Youth & Family Servs. v. A.G., 344 N.J. Super. 418, 442-43 (App. Div. 2001) (emphasis added) (citing Rova Farms Resort, Inc. v. Inv'rs Ins. Co. of Am., 65 N.J. 474, 484 (1974)), certif. denied, 171 N.J. 44 (2002); accord Johnson, supra, 42 N.J. at 162. Here, the Evaluation was admitted into evidence at the fact-finding hearing, and thus was "evidence in the record" and part of "the proofs as a whole." A.G., supra, 344 N.J. Super. at 443. In judging the sufficiency of the evidence, "a reviewing court [must] 'consider all of the evidence admitted by the trial court.'" See generally State v. Gibson, 219 N.J. 227, 245 (2014) (quoting Lockhart v. Nelson, 488 U.S. 33, 41, 109 S. Ct. 285, 291, 102 L. Ed. 2d 265, 274 (1988)).

Here, the trial court's finding that Stepfather abused or neglected J.V. was supported by adequate, substantial, and credible evidence in the record, if Dr. Perry's diagnoses and opinions are included. Even ignoring that improperly-admitted evidence, the Division's other evidence, namely the hearsay statements of Mother and J.V., might arguably have supported a finding of "substantial risk" of harm and "imminent danger" of impairment of J.V.'s mental or emotional condition. N.J.S.A. 9:6-8.21(c)(4). Thus, we cannot say that reversal precluding a new-fact-finding hearing "is necessary to correct an injustice." N.J. Div. of Youth & Family Servs. v. F.M., 211 N.J. 420, 448 (2012).

However, the Division chose to prove harm and impairment by introducing the diagnoses and opinions of a psychologist without calling the psychologist to testify and be cross-examined. The trial court relied heavily on that inadmissible hearsay to find actual harm and impairment and thus abuse or neglect. Accordingly, the appropriate remedy here is to remand for a new fact-finding hearing.

Vacated and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION