# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4216-17T1

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

      Plaintiff-Respondent,

v.

N.Y.,

      Defendant-Appellant,

and

L.C. and A.S.D.,

      Defendants.

_____

IN THE MATTER OF K.C., M.Y.,
D.T.Y., N.Y., and N.D.C.,

      Minors.

_____

Submitted March 23, 2020 – Decided April 13, 2020

Before Judges Sabatino and Geiger.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Passaic County, Docket No. FN-16-0079-17.

Joseph E. Krakora, Public Defender, attorney for appellant (Robyn A. Veasey, Deputy Public Defender, of counsel; Marina Ginzburg, Designated Counsel, on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent (Jane C. Schuster, Assistant Attorney General, of counsel; Viviane Cristina Sullivan, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minor, N.D.C. (Rachel E. Seidman, Assistant Deputy Public Defender, on the brief).

PER CURIAM

Defendant N.Y. (Nick)[1] appeals from an April 11, 2018 Family Part order terminating litigation in this Title Nine case; a January 3, 2018 order dismissing his minor daughter, N.D.C. (Natalie), from the litigation because a guardianship complaint was filed; and the underlying June 21, 2017 order finding that he sexually abused and neglected Natalie. We affirm.

---

[1] We refer to the parties and the children by initials and fictitious names to preserve their confidentiality and for ease of reference. R. 1:38-3(d)(12).

Nick is the biological father of Natalie; L.C. (Lacy) is her biological mother.[2] Nick and Lacy were married but had separated in 2014, due to Nick's extramarital affair with V.K. (Valerie). Their marriage produced Natalie and N.Y. (Noelle), among other children.

In the fall of 2015, Natalie and Noelle, and some of their siblings, were residing with Nick, Valerie, and Valerie's children in Paterson. Natalie was then thirteen and Noelle was eleven.

Sometime thereafter, Natalie was arrested when she and a group of friends stole a woman's car keys from her person and began driving her car around Paterson. When police tried to pull the vehicle over, the driver stopped suddenly and all passengers, including Natalie, fled. Natalie was soon apprehended, subsequently placed on house arrest, and required to wear an ankle monitor.

In the summer of 2016, Natalie was sentenced to probation for one year and her ankle monitor was removed. Soon thereafter, she began staying out late and acting disobediently. On August 3, 2016, Valerie threatened to report Natalie's behavior to her probation officer. In response, Natalie ran away from home. Natalie's godmother, D.Z. (Dana), and her godmother's adult daughter, R.Z. (Rachel), were contacted about Natalie's disappearance.

---

[2] Lacy has not challenged the trial court's rulings or participated in this appeal.

A-4216-17T1

After searching Paterson, Rachel found Natalie and brought her back to Dana's home. Eventually, Natalie disclosed to both Dana and Rachel that on several recent occasions, Nick had grabbed her buttocks and breasts, and made lewd comments to her. Natalie intimated that Nick's behavior had been ongoing from November 2015 to July 2016, but to her knowledge did not involve any of her siblings.

After hearing her accusations, Rachel took Natalie to the police and subsequently to the Passaic County Prosecutor's Office where Natalie provided a statement detailing the sexual abuse. The police notified the Division of Child Protection and Permanency (Division). Division caseworkers interviewed Natalie and her family. During the interviews, Natalie reiterated her accusations. Both Nick and Valerie denied the claims, attributing them to Natalie's displeasure with following their rules.

On September 20, 2016, Natalie underwent a psychosocial evaluation by Kirsten Byrnes, Psy.D., a staff psychologist at Audrey Hepburn Children's House (AHCH). Anthony D'Urso, Psy.D., served as supervising psychologist. The resulting report explained that during the evaluation Natalie recounted her accusations against Nick, explained her current emotional state, and informed Byrnes that she witnessed multiple instances of domestic violence and substance

abuse in her homelife. The report found clinical evidence of physical abuse; emotional abuse; exposure to intimate-partner violence, substance abuse, and firearms; and inappropriate sexual boundaries.

On October 20, 2016, the Division filed a verified complaint under Title Nine for custody, care and supervision of Natalie and Noelle. The fact-finding hearing took place over five non-consecutive days in 2017. At issue was whether Natalie was an abused and neglected child under N.J.S.A. 9:6-8.21(c)(3). The Division presented testimony by D'Urso, Natalie, and Division investigator Mario Jumique. Neither Nick nor Lacy testified during the hearing.

The parties stipulated that D'Urso is an expert in child psychology and sexual abuse of children. D'Urso testified that he is the "supervising psychologist and section chief" at AHCH and, along with co-directing the facility, he is "responsible for all of the mental health services."

D'Urso testified that Natalie was referred to AHCH by the Division in September 2016, for a psychosocial evaluation relating to allegations of sexual behavior by her father, Nick. The interview and report primarily related to Natalie's "emotional functioning and any treatment related services or recommendations that would be appropriate for her." D'Urso confirmed that

5

Byrnes interviewed Natalie but stated that he was part of the entire process "from the referral until the signature that's on the report."

D'Urso recounted how, during her interview, Natalie expressed that her father fondled her and made sexual advances towards her on multiple occasions. D'Urso explained that a Millon Adolescent Clinical Inventory test was administered on Natalie, which "is a general measure of emotional functioning so it assesses . . . anxiety, depression, relationships, self-esteem, worry, sexualized discomfort, as well as things like attitude towards parents, [and] school." The test revealed that Natalie is "anxious and depressed," experiences "social isolation," and "that she had some emotional difficulties." Natalie was diagnosed with "persistent depressive disorder" and "child physical abuse."

Natalie testified in camera.[3] She stated that Nick's sexual advances began one night in November 2015 while she was sleeping in her room and suddenly awoken by Nick. Nick asked Natalie to speak with him in the hallway. During the conversation, Nick asked Natalie whether she was having sex and if he could "break [her] off?" He subsequently grabbed her forearm. Natalie broke free of

---

[3] Under Rule 5:12-4(b), a trial judge may permit a child's testimony to be "taken privately in chambers." On appeal, defendant has not challenged the judge's decision to permit Natalie to testify in camera.

Nick's grip, responded, "no," and walked back to her room, locking the door behind her. Natalie testified that she later discovered the phrase, "break you off," was sexual in nature and "was scared" of being "rape[d]" by Nick.[4]

Natalie then testified that in January 2016, while she was in the kitchen washing dishes, Nick came up behind her and wrapped his arms around her waist. When she pushed Nick away, he began laughing and called her "a punk." Natalie testified that Noelle was also in the kitchen and exchanged a "weird look" with her following Nick's embrace. In fact, Noelle previously told Division investigators that she had seen Nick embrace Natalie "a couple of times" and reenacted their encounter by "brush[ing] her hand across her chest and buttocks."

Next, Natalie testified that in March 2016, Nick was lying on the couch while holding her baby sibling. Nick called Natalie and asked her to put the baby to bed. When Natalie leaned over the couch to pick the baby up, Nick "touched" Natalie's breast. When Natalie asked him what he was doing, Nick responded by laughing and then going to sleep.

---

[4] In its decision, the court stated that "in contemporary vernacular [the phrase] means to engage in sexual intercourse."

A-4216-17T1

Finally, Natalie recounted an evening in July 2016, where she was lying in bed and "heard the door creep open." She assumed it was one of her siblings, so she continued lying still. Eventually, she began to sense someone staring at her intensely; when Natalie turned, she saw Nick in the doorway. Nick then reached out and tried to touch Natalie's buttocks, but she began yelling. Nick responded by laughing while exiting the room. Natalie detailed how Nick's behavior made her feel "hopeless" and led to suicidal ideations.

Natalie was extensively cross-examined by defense counsel in an effort to attack her credibility. Nick contended that Natalie was accusing him of sexual abuse because she was frustrated with multiple unrelated issues, including: (1) having to babysit her siblings and change their diapers all the time; (2) Nick cheating on Lacy with Valerie; (3) Valerie threatening to call Natalie's probation officer if she continued acting out; and (4) instances of emotional and physical abuse, separate from the sexual abuse allegations.

Following Natalie's testimony, the parties submitted written summations and the record was closed. The judge issued a June 20, 2017 oral opinion finding the Division had proven that Natalie was an abused and neglected child under N.J.S.A. 9:6-8.21(c)(3). An order reflecting the ruling was entered the following day.

8

Specifically, the judge found "[t]here were several incidents in which [Nick] subjected [Natalie] to inappropriate sexual contact." "[B]ased upon the weight of the credible testimony," the judge found Nick "touched [Natalie] in her intimate areas and was asked by [Nick] whether [she] would allow -- him to break her off." The judge further found that Nick "wrapped his arms around [Natalie's] waist and pulled her body close to his," making "her feel uncomfortable." The judge also found that Nick "cupped her breast and smacked her buttocks."

The judge noted "D'Urso testified that [Natalie] recounted the same incidents during the course of her psychological evaluation." The judge also noted that Jumique testified that "[Natalie's] account of [Nick's] inappropriate conduct did not waiver during the investigation."

The judge determined that Nick committed the acts of abuse for the purpose of sexual gratification or humiliation of Natalie. The judge commented that Natalie's psychological evaluation supported this finding because she displayed "signs of anxiety, depression, social isolation, impaired interpersonal relationships" and resulted in "findings of inappropriate sexual boundaries."

The judge found D'Urso's testimony "to be direct and credible as well as highly informative." Likewise, he found Jumique's testimony to be "non

9

evasive, direct and consistent . . . and credible."  The judge found that Natalie "withstood the cross[-]examination" and her "testimony was consistent, not only with the statements made to the Division as reflected in their various investigations," but also with her statements during her psychosocial examination.  The judge noted that defense counsel conducted robust cross-examination of Natalie that intensely tested her credibility and accusations she made.

The judge rejected defendant's contention that this was just friendly, nonsexual play and "all fun and games."  Based on these findings, he determined that Natalie was sexually abused by Nick, qualifying her an abused and neglected child under N.J.S.A. 9:6-8.21(c)(3).  The Law Guardian advocates that we should affirm the trial court's decision.

On November 14, 2017, both Nick and Lacy completed a voluntary surrender of their parental rights to Natalie and Noelle.  This appeal followed.

Nick raises the following points for our consideration:

> I. THE TRIAL COURT'S FACT-FINDING DECISION MUST BE REVERSED AS DCPP DID NOT PROVE BY THE PREPONDERANCE OF THE CREDBILE EVIDENCE THAT NICK SEXUALLY ABUSE[D] NATALIE AND THE TRIAL COURT'S FINDINGS WERE NOT SUPPORTED IN THE RECORD.

a. NATALIE'S OUT-OF-COURT STATEMENTS REGARDING THE ALLEGED SEXUAL ABUSE WERE NOT CORROBORATED. AS REQUIRED UNDER N.J.S.A. 9:6[-]8.46(A)(4) AND THEREFORE DCPP DID NOT PROVE BY THE PREPONDERANCE OF THE EVIDENCE THAT NICK SEXUALLY ABUSED NATALIE. (Not raised below).

b. NICK'S DUE PROCESS RIGHT[S] WERE VIOLATED BECAUSE HE WAS NOT ABLE TO CROSS[-]EXAMINE THE MEDICAL PROFESSIONAL WHO PERFORMED THE PSYCHOLOGICAL EVALUATION ON NATALIE. (Not raised below).

In reviewing the decision of a family court, we "defer to the factual findings of the trial court," New Jersey Division of Youth & Family Services v. E.P., 196 N.J. 88, 104 (2008), in recognition of the "family courts' special jurisdiction and expertise in family matters," New Jersey Division of Youth & Family Services v. M.C. III, 201 N.J. 328, 343 (2010) (quoting Cesare v. Cesare, 154 N.J. 394, 413 (1998)). "Concomitantly, reviewing courts should defer to the trial court's credibility determinations" as well. N.J. Div. of Youth & Family Servs. R.G., 217 N.J. 527, 552 (2014). It is "[o]nly when the trial court's conclusions are so 'clearly mistaken' or 'wide of the mark'" that we will intervene and make our own findings "to ensure that there is not a denial of justice." E.P., 196 N.J. at 104 (quoting N.J. Div. of Youth & Family Servs. v. G.L., 191 N.J.

11

596, 605 (2007)).  However, "[a] trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference."  Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995) (citations omitted).  The court's interpretation of the law or its legal conclusions are reviewed de novo.  State in Interest of A.B., 219 N.J. 542, 554-55 (2014).

We first address the contention that admission of the psychosocial evaluation and D'Urso's testimony in relation to that evaluation was error.  Defense counsel did not object to the admission of the psychosocial evaluation report or D'Urso's testimony.  We conclude, contrary to the objection now raised on appeal, that the report was properly admitted.

We review a court's evidentiary rulings under an abuse of discretion standard.  N.J. Div. of Child Prot. & Permanency v. N.T., 445 N.J. Super. 478, 492 (App. Div. 2016) (citing State v. Kuropchak, 221 N.J. 368, 385 (2015)).  We reverse discretionary determinations, as with all rulings on the admissibility of evidence, only "when the trial judge's ruling was 'so wide of the mark that a manifest denial of justice resulted.'"  N.J. Div. of Youth & Family Servs. v. M.G., 427 N.J. Super. 154, 172 (App. Div. 2012) (quoting State v. Carter, 91

N.J. 86, 106 (1982)).  Evidentiary rulings not objected to will be reversed only if deemed plain error.  R. 2:10-2.

The admissibility of evidence in Title 9 actions is governed by statute, court rule, and the rules of evidence.  N.J.S.A. 9:6-8.46(b) provides that only "competent, material and relevant" evidence may be admitted in such actions and that a finding of abuse and neglect must be proved by "a preponderance of the evidence."  Further, N.J.S.A. 9:6-8.46(a)(3) provides that business records of any hospital, public or private institution, or agency, relating to a child in an abuse or neglect proceeding, shall be admissible in evidence if the judge finds that it was made in the regular course of the business, and such records "shall be prima facie evidence of the facts contained [therein]."  "All other circumstances of the making of the memorandum, record or photograph, including lack of personal knowledge of the making, may be proved to affect its weight, but they shall not affect its admissibility."  N.J.S.A. 9:6-8.46(a)(3).

The ACHC Report

Rule 5:12-4(d) permits the Division to submit into evidence, pursuant to N.J.R.E. 803(c)(6) and 801(d), "reports by staff personnel or professional consultants" and states, "[c]onclusions drawn from the facts stated therein shall be treated as prima facie evidence, subject to rebuttal."  N.J.R.E. 801(d) defines

A-4216-17T1

the term "business" to include "government agencies" and N.J.R.E. 803(c)(6) allows into evidence a statement in a writing of acts, events, conditions, and—subject to N.J.R.E. 808—opinions or diagnoses made at or near the time of observation by a person with personal knowledge or from information supplied by such person, "if the writing . . . was made in the regular course of business and it was the regular practice of that business to make it" unless the source or circumstances of preparation indicate it is not "trustworthy."

The AHCH report was obtained by the Division in the ordinary course of business. Its author is a "professional consultant" engaged by the Division. The circumstances under which the report was made and the manner in which it was prepared provided sufficient indication of its trustworthiness and "supply a reasonably high degree of reliability as to the accuracy of the facts contained therein." In re Guardianship of Cope, 106 N.J. Super. 336, 344 (App. Div. 1969). Thus, the report was admissible under N.J.S.A. 9:6-8.46(a)(3) and N.J.R.E. 803(c)(6) pursuant to Rule 5:12-4(d).

Since the report was admissible, the report could be relied upon as proof of any "condition, act, transaction, occurrence or event" reflected therein. N.J.S.A. 9:6-8.46(a)(3). Further, the conclusions drawn from the facts set forth in the report "shall be treated as prima facie evidence, subject to rebuttal." R.

A-4216-17T1

5:12-4(d). There was no factual "embedded hearsay" contained in the report that was relied upon by the trial court and not otherwise shown by the testimony. Accordingly, the judge properly relied upon the report in finding that Natalie had been abused and neglected.

D'Urso's Testimony

We reject the argument that D'Urso's opinion testimony should have been barred. This argument is unsupported by the factual record, N.J.R.E. 703, and case law. Admitting D'Urso's testimony was not an abuse of discretion, much less plain error.

Contrary to Nick's argument, the Division was not required to present Byrne's testimony merely because she conducted Natalie's interview. An expert's opinion must be based upon "facts or data . . . perceived by or made known to the expert at or before a hearing." N.J.R.E. 703. "Indeed, an expert's testimony may be based on the work done or even hearsay evidence of another expert, particularly when, as here, the latter's work is supervised by the former." State v. Dishon, 297 N.J. Super. 254, 281 (App. Div. 1997) (citing State v. Stevens, 136 N.J. Super. 262, 264 (App. Div. 1975)). N.J.R.E. 808 does not compel a contrary result.

N.J.R.E. 808 provides:

> Expert opinion which is included in an admissible hearsay statement shall be excluded if the declarant has not been produced as a witness unless the trial judge finds that the circumstances involved in rendering the opinion, including the motive, duty, and interest of the declarant, whether litigation was contemplated by the declarant, the complexity of the subject matter, and the likelihood of accuracy of the opinion, tend to establish its trustworthiness.

Here, D'urso collaborated on the ACHC report and co-signed it as supervising psychologist. D'Urso testified during the fact-finding hearing and was cross-examined at length by defense counsel. Defense counsel did not object to the admission of the ACHC report or D'Urso's testimony. Moreover, Nick does not raise or brief any alleged N.J.R.E. 808 violation on appeal.

We find these facts distinguishable from those in Division of Youth & Family Servs. v. M.G., 427 N.J. Super. 154 (App. Div. 2012) and Division of Youth & Family Servs. v. N.T., 445 N.J. Super. 478, 501 (App. Div. 2016). In M.G., the parent objected to "permit[ting] the Division to rely upon the written reports of the psychologists without requiring the Division to produce the experts for cross-examination." M.G., 427 N.J. Super. at 172. Similarly, in N.T., over the stepfather's objection, the trial court admitted the complex diagnosis and opinion contained in a report without the expert testifying. N.T., 445 N.J. Super. at 502.

Moreover, as noted in N.T, "a party is free to waive objection to the admission of hearsay." Id. at 503. In cases where, as here, a party makes "a strategic decision to try the case based on the documents, instead of possibly facing a witness's direct testimony, it would be unfair to reverse on this issue." Div. of Youth & Family Servs. v. M.C. III, 201 N.J. 238, 342 (2010). "Under those circumstances, we hold that defendant is barred by the doctrine of invited error from contesting for the first time on appeal the admission of the various documents." Ibid. That is what occurred in this case. We are convinced that "no fundamental injustice [resulted] that would warrant relaxing the invited error doctrine." Ibid.

Here, the parties stipulated that D'Urso is an expert in psychology, specializing in the sexual abuse and maltreatment of children. The facts relayed by D'Urso were derived from his active participation in the clinical process. Natalie's interview and evaluation were conducted under his supervision, which encompassed the content and scope of the questions utilized in the interviews as well as the information obtained therefrom. As the judge noted, D'Urso "described in detail the process of rounding cases and discussing them and reviewing reports, [making him] fully familiar with the investigation evaluation and report writing."

Further, the information relied upon by D'Urso in formulating his opinion was that ordinarily relied upon by experts in his profession.  If the facts or data are "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence."  Ibid.  See also State v. Torres, 183 N.J. 554, 576 (2005); Dishon, 297 N.J. Super. at 280-81.

For the first time on appeal, Nick argues that his right to due process was violated because he could not confront Byrne and cross-examine her.  We disagree.

We recognize that "[a]lthough the Sixth Amendment right to confrontation is not applicable in civil proceedings, due process guarantees civil litigants a measure of confrontation."  A.B. v. Y.Z., 184 N.J. 599, 604 (2005) (citing In re Wolf, 231 N.J. Super. 365, 376-77 (App. Div. 1989)).  We apply recent Confrontation Clause case law by analogy without holding that the Due Process Clause for civil proceedings is equally stringent.

The right to confrontation may be waived by failure to object to the offending evidence.  Melendez-Diaz v. Massachusetts, 557 U.S. 305, 313 n.3 (2009); accord State v. Williams, 219 N.J. 89, 98 (2014).  The defendant must raise his Confrontation Clause objections.  Melendez-Diaz, 557 U.S. at 327;

accord Williams, 219 N.J. at 99, 101. Here, despite being put on notice that the Division would be calling D'Urso to testify, Nick did not notify the Division that he intended to object to D'Urso's testimony. See Williams, 219 N.J. at 102 (explaining that after such notice, the defense should be required to notify the State of its objection to the expected expert testimony on Confrontation Clause grounds). Likewise, Nick did not object to D'Urso's testimony during the hearing. In short, Nick failed to raise or preserve his due process claim. That claim is waived.

Moreover, Nick was afforded "a measure of confrontation" through extensive cross-examination of D'Urso. We thus conclude that the failure to object was not "clearly capable of producing an unjust result." Id. at 99 (quoting R. 1:7-5).

Additionally, not "every analyst involved in a testing process must testify in order to satisfy confrontation rights." State v. Roach, 219 N.J. 58, 77 (2014) (citing State v. Michaels, 219 N.J. 1, 33 (2014)). Nor is the primary analyst involved in the testing always required to testify to avoid a Confrontation Clause violation. Ibid. Instead, a supervisor may supervise the testing and serve as the assigned independent reviewer of a lab analyst's work, and then testify about the test results in a report that he authored, signed, and certified. Michaels, 219 N.J.

at 6-7.  The supervisor is not required to personally observe the testing.  <u>Roach</u>, 219 N.J. at 78 (citing <u>Michaels</u>, 219 N.J. at 45-46).

Finally, we conclude that Nick's claim that D'Urso should not have been permitted to testify is barred by the invited-error doctrine.  "The invited-error doctrine is intended to 'prevent defendants from manipulating the system' and will apply 'when a defendant in some way has led the court into error' while pursuing a tactical advantage that does not work as planned."  <u>Williams</u>, 219 N.J. at 100 (citing <u>State v. A.R.</u>, 213 N.J. 542, 561-62 (2013)).  Nick did not object at trial to D'Urso's testimony or the admission of the AHCH report.  Instead, he strategically used the fact that D'Urso's did not perform Natalie's interview and the perceived limitations of the ACHC report to his advantage in attempting to show the relative weakness of the Division's case.  "The doctrine of invited error does not permit a defendant to pursue a strategy of allowing a substitute witness to testify—hopefully to his advantage—and then when the strategy does not work out as planned, cry foul and win a new trial."  <u>Id.</u> at 101.

<u>Proof of Sexual Abuse by a Preponderance of the Evidence</u>

We next address Nick's argument that the Division did not prove he sexually abused Natalie by a preponderance of the credible evidence.  Title 9 defines an "abused or neglected child" as "a child less than [eighteen] years of

age whose parent or guardian . . . commits or allows to be committed an act of sexual abuse against the child." N.J.S.A. 9:6-8.21(c)(3). The Division bears the burden to prove abuse or neglect by a preponderance of the "competent, material and relevant evidence." N.J.S.A. 9:6-8.46(b).

The Legislature has defined "sexual abuse" to mean "contacts or actions between a child and a parent or caretaker for the purpose of sexual stimulation of either that person or another person." N.J.S.A. 9:6-8.84. Sexual abuse includes engaging a child in "any sexually explicit conduct or simulation of such conduct," molestation, incest, "sexual contact as defined in N.J.S.A. 2C:14-1," or "a prohibited sexual act as defined in N.J.S.A. 2C:24-4." Ibid.

The Legislature has addressed the sufficiency of evidence in Title Nine proceedings. Under N.J.S.A. 9:6-8.46(a)(4), an uncorroborated statement of sexual abuse by a child is admissible in an abuse or neglect proceeding, but an uncorroborated statement standing alone is not "sufficient to make a fact finding of abuse or neglect." N.J. Div. of Child Prot. & Permanency v. J.A., 436 N.J. Super. 61, 66-67 (App. Div. 2014) (quoting N.J.S.A. 9:6-8.46(a)(4)). Therefore, "a child's hearsay statement may be admitted into evidence, but may not be the sole basis for a finding of abuse or neglect." Ibid. (quoting N.J. Div. of Youth & Family Servs. v. P.W.R., 205 N.J. 17, 33 (2011)). However, "the

21

corroboration requirement of the statute does not apply where the child victim testifies to the abuse at a fact-finding hearing." N.J. Div. of Child Prot. & Permanency v. Y.A., 437 N.J. Super. 541, 542 (App. Div. 2014). Here, Natalie testified in camera during the fact-finding hearing, described the sexual abuse, and answered all the questions asked by defense counsel. "Her testimony was subjected to the rigors of cross-examination and her presence at the fact-finding hearing permitted the judge to assess her demeanor and credibility." Id. at 547-48. "Under these circumstances . . . N.J.S.A. 9:6-8.46(a)(4) is inapplicable" and corroboration was not required. Id. at 548.

The trial court appropriately evaluated the evidence presented, made findings of fact that are supported by credible evidence in the record, and correctly applied controlling law. Given our own review of the record and the deferential standard with which we undertake that review, we discern no basis to overturn the finding of abuse and neglect.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4216-17T1