# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0052-17T4

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

     Plaintiff-Respondent,

v.

T.K.,

     Defendant-Appellant,

and

R.L.,

     Defendants.

_____

IN THE MATTER OF A.K. and Z.E.,

     Minors.

_____

Submitted December 6, 2018 – Decided February 11, 2019

Before Judges O'Connor and Whipple.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Essex County, Docket No. FN-07-0428-15.

Joseph E. Krakora, Public Defender, attorney for appellant (Jennifer M. Kurtz, Designated Counsel, on the briefs).

Gurbir S. Grewal, Attorney General, attorney for respondent (Jason W. Rockwell, Assistant Attorney General, of counsel; Joseph J. Maccarone, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minors (Danielle Ruiz, Designated Counsel, on the brief).

PER CURIAM

Defendant T.K. (Tiffany)[1] appeals from an August 18, 2017 order terminating litigation after two Family Part judges found she abused or neglected her son, A.K. (Alex), on two occasions, and approved a permanency plan for the termination of her parental rights to Alex and her daughter, Z.E. (Zelda), followed by adoption. We affirm.

Tiffany has been involved with the Division of Child Protection and Permanency (Division) since she was twelve. Tiffany suffered from stress,

---

[1] We use pseudonyms and initials to protect the privacy and identity of the family and parties, and because it allows for ease of reference when family members have similar initials. R. 1:38-3(c)(12). By doing so, we mean no disrespect.

A-0052-17T4

anxiety and bipolar disorder associated with traumatic life experiences. She also has experienced financial and housing instability, as well as substance abuse issues. Tiffany transitioned from foster care to the Division's independent living services when she reached adulthood.

Tiffany gave birth to Alex on February 28, 2015. She lived with Alex in a "Mommy and Me" residential program that provided her with shelter and stability. At that point, the Division's independent living stipend was Tiffany's sole source of financial support. On April 7, 2015, she went to the Division office to get her stipend. A week before, Tiffany told her Division worker that Alex was throwing up milk and she had taken him to the emergency room twice. When asked whether she scheduled a doctor's appointment for Alex, as the Division recommended, Tiffany said she did not. The Division helped her schedule an appointment.

Tiffany returned to the Division office on April 9, 2015, ostensibly to sign herself off of Division services and supervision because she planned to go on welfare. The worker at the front desk noticed Alex was wet and provided a change of clothes. When asked why Alex was wet, Tiffany explained he was allergic to the brand of diapers supplied by the residential program and she did not know where to buy diapers. The Division worker asked what the doctor

3

recommended at Alex's recent appointment. Tiffany reported the only advice the doctor provided was to give Alex more milk. The worker called the doctor, who explained on speaker phone to Tiffany and the Division worker that Tiffany had been given a long list of instructions including giving Alex more formula. A Division worker asked Tiffany how she planned to support herself and Alex. Tiffany did not have a plan. Due to the Division's concern that Tiffany was unable to fully repeat what the doctor had told her, and what the Division perceived as a lack of sufficient child care knowledge, the Division offered to place a parent aide at the residential program to monitor Tiffany and Alex. However, Tiffany resisted both this offer and signing an authorization allowing the Division to speak to the residential program.

The Division later learned Tiffany faced a one-week suspension for non-compliance with the residential program. On April 13, 2015, the Division filed a complaint and an order to show cause, and the trial court granted the Division temporary custody of Alex. On July 30, 2015, following a hearing, the trial court found Tiffany was unable to adequately care for Alex and removed him from her custody and placed him with a resource parent, C.B. A fact-finding hearing was conducted on July 30, 2015, during which the Division worker testified, and Division records and a report from the residential program were

4

admitted into evidence. After the hearing, the judge placed his findings on the record. The judge determined Tiffany had placed Alex at substantial risk of harm by a preponderance of the evidence. The basis of the finding was Tiffany was unable to care for Alex in a supervised setting, refused additional support that was offered, was suspended from the program, and, without any form of financial assistance, attempted to sign herself off of Division services without an adequate plan for Alex's care. Additionally, she lacked basic childcare knowledge and was unable to recite the pediatrician's recommendations. Alex remained in his resource home and services were ordered for Tiffany.

Zelda was born on March 8, 2016. At that time Tiffany was engaging in services, and, on August 26, 2016, the Division returned Alex to her care. Tiffany resided at a transitional living facility. Shortly after the reunification, she was evicted from the facility. Tiffany then went to live with a friend, L.E., and the Division believed the children were safe there. Soon after Tiffany and Alex were reunified, Tiffany called C.B. and asked her to take Alex on the weekends. C.B. agreed, and on October 11, 2016, the Division received a referral that Tiffany and her children were sleeping in Penn Station and Tiffany was abusing alcohol and drugs. The Division conducted a visit on November 28, 2016 and noticed Alex did not look well. Tiffany said Alex had recently

5

come from C.B.'s house. In late November 2016, Tiffany called C.B. and asked if she could pick up Alex because he would not stop crying. C.B. did so and, upon seeing he was sick, took him to the emergency room, where he was diagnosed with pneumonia. Alex stayed with C.B. for several weeks. Tiffany did not visit Alex and offered no financial support for his care despite C.B.'s request.

On December 17, 2016, L.E. called the Division to report she had not seen Tiffany and Zelda for several days. The Division paid an unannounced visit to L.E. and Tiffany's apartment on December 21, 2016 and found Tiffany and Zelda, who appeared to be safe. On December 29, 2016, a Division worker exchanged text messages with Tiffany, who reported L.E. had kicked her out and asked if the Division were coming to take her kids. The Division believed Tiffany was homeless because L.E.'s apartment was her only known source of stable housing. During this exchange, L.E. called the Division to report she had been taking care of Zelda for three days and Tiffany had not contacted her. L.E. also explained she did not kick Tiffany out and she did not know where Tiffany was.

Meanwhile, on the same day, a woman named J.W. appeared at the Division's office and introduced herself as Tiffany's wife. J.W. expressed

concern for Zelda and mentioned she often took care of her. She reported Alex had been with C.B. for weeks and Tiffany often left Zelda in the care of different people.[2] Upon receiving this information, the Division executed an emergency removal of both Alex and Zelda.

A Division worker called Tiffany and informed her the Division would be removing both her children. Tiffany hung up on the Division worker and minutes later appeared at the Division office. Tiffany told the front desk personnel the Division was going to "have to find me and the baby." A Division worker called L.E. to ensure she did not give Zelda to Tiffany. Division workers, along with police officers, arrived at L.E.'s apartment and safely removed Zelda. Later that day, the Division removed Alex from C.B.'s house. Both children received physicals, and Alex was found to be healthy, while Zelda was suffering from eczema. On January 3, 2017, the trial court granted the Division temporary custody, care, and supervision of the children and placed both children with C.B.

On June 23, 2017, a different Family Part judge conducted the second fact-finding hearing. Both C.B. and a Division supervisor testified for the Division.

---

[2] The trial judge relied on this conversation only for the purpose of learning why the Division acted, not the truth of the matter asserted.

A-0052-17T4

Tiffany called no witnesses. The trial judge found C.B.'s testimony regarding her care of Alex in November and December 2016 credible. He also found the Division supervisor credible and admitted into evidence the Division's report chronicling its concern over Alex and Zelda's safety and Tiffany's psychological evaluation.[3] The trial judge found Tiffany left Alex with C.B. for an extended period of time and did not check in on him or provide C.B. with any financial or material assistance to care for Alex.

The court also found Tiffany did not adequately plan for her children and left them in the care of individuals without providing any indication how long the children would be left with such caregivers and did not provide any resources for the caregivers. The judge determined this supported a finding Tiffany neglected Alex, pursuant to N.J.S.A. 9:6-8.21(c)(4)(b), because she failed to exercise a minimum degree of care. Because there was little evidence concerning Zelda, the trial judge did not make a finding Tiffany neglected her. Nevertheless, both Alex and Zelda remained in the Division's custody and the trial judge approved the Division's plan to seek termination of Tiffany's parental

---

[3] The trial judge excluded several hearsay statements in the Division's report and a psychological evaluation, because they contained uncorroborated allegations of Tiffany's behavior from out-of-court declarants.

A-0052-17T4

rights to both children followed by adoption. On August 18, 2017, the trial judge dismissed the FN litigation. This appeal followed.

On appeal, Tiffany argues both the 2015 and 2017 findings she abused or neglected Alex were error. She submits the 2015 trial judge relied on Tiffany's youth, inexperience as a mother, and poverty to find she abused Alex, and failed to identify any particular conduct indicating she failed to exercise a minimum degree of care. Additionally, she argues C.B.'s 2017 testimony was not credible and the judge had no basis to conclude she abused or neglected Alex.

We defer to a trial court's findings of fact and credibility determinations if they are sustained by "adequate, substantial, and credible evidence" in the record. N.J. Div. of Youth & Family Servs. v. R.G., 217 N.J. 527, 552 (2014). As a general rule, with respect to the exclusion or admission of evidence, we afford "[c]onsiderable latitude . . . [to a] trial court in determining whether to admit evidence, and that determination will be reversed only if it constitutes an abuse of discretion." N.J. Div. of Child Prot. & Permanency v. N.T., 445 N.J. Super. 478, 492 (App. Div. 2016) (quoting State v. Kuropchak, 221 N.J. 368, 385 (2015)). We owe no special deference to the trial court's rulings here because they essentially involved the application of legal principles and did not

turn upon contested issues of witness credibility.  See Manalapan Realty, LP v.

Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

We first address the 2015 finding and affirm.  Tiffany was found to have

abused or neglected Alex pursuant to N.J.S.A. 9:6-8.21(c)(4)(b).  The statute

defines a neglected child as:

> a child whose physical, mental, or emotional condition
> has been impaired or is in imminent danger of
> becoming impaired as the result of the failure of his
> parent or guardian . . . to exercise a minimum degree of
> care  .  .  .  (b)  in  providing  the  child  with  proper
> supervision or guardianship, by unreasonably inflicting
> or allowing to be inflicted harm, or substantial risk
> thereof . . . .
>
> [N.J.S.A. 9:6-8.21(c)(4)(b).]

The  basis  of  the  court's  2015  finding  was  Tiffany  failed  to  meet  the

standard of care imposed by this statue, even in a supervised setting.  She refused

additional support offered by the Division; was suspended from the residential

program; without having any other form of financial assistance or housing,

rejected Division services without an adequate plan for Alex's care; lacked basic

childcare  knowledge;  and  was  unable  to  recite  the  pediatrician's

recommendations.  Defendant argues the court's finding should be reversed

because no gross negligence or recklessness was proven by a preponderance of

evidence.

Our Supreme Court has said the standard for abuse and neglect is met when a parent's conduct is at least "grossly or wantonly negligent." G.S. v Dep't of Human Servs., 157 N.J. 161, 178 (1999). A parent "fails to exercise a minimum degree of care when he or she is aware of the dangers inherent in a situation and fails [to] adequately . . . supervise the child or recklessly creates a risk of serious injury to that child." Id. at 181. In making this determination, courts analyze the harm to the child and whether the harm could have been prevented. Id. at 182. The Division must show substantial and imminent danger or substantial risk of harm to the child, but need not wait until the child is harmed. N.J. Dep't of Children & Families, Div. of Youth & Family Servs. v. A.L., 213 N.J. 1, 22-23 (2013).

While the court's rationale could have been more clearly articulated, it is implicit the court's finding was based upon Tiffany taking steps that would have unnecessarily rendered her and Alex homeless and without financial or other resources. We are satisfied these actions by Tiffany created a substantial risk of harm to Alex.

Regarding the 2017 finding of abuse and neglect, Tiffany argues the judge's decision should be reversed because it was so wide of the mark as to be clearly mistaken, and the elements of imminent danger and parental fault are

absent. The basis of the 2017 finding was that Tiffany left Alex with C.B. for an extended period of time and did not check in on him or provide C.B. with any financial or material assistance to care for Alex. The court found Tiffany did not adequately plan for her children and left them in the care of individuals, providing neither an indication of how long the children would be left with them nor any resources. The judge determined this supported a finding Tiffany neglected Alex, pursuant to N.J.S.A. 9:6-8.21(c)(4)(b), because she failed to exercise a minimum degree of care. We disagree.

The court specifically found Tiffany's practice of dropping off Alex at C.B.'s house on weekends did not constitute abuse or neglect. Rather, the court found Tiffany abused or neglected Alex because Tiffany left Alex for several weeks in November and December 2016 without providing baby supplies or financial assistance to C.B. C.B. agreed to this arrangement initially, but complained it was inconsiderate and unfair when the period of time became weeks rather than weekends. The record does not fully support a finding that Alex was placed at a risk of harm as a result of Tiffany's failure to exercise a minimum degree of care. The record demonstrates he was safe in C.B.'s care even if C.B. was dissatisfied with Tiffany's failure to provide financial support.

A-0052-17T4

No additional findings were made by the court. Hence, we reverse as unsupported the court's June 23, 2017 finding of abuse and neglect.

In light of our disposition, we instruct the Division to remove from its records all references to abuse or neglect being "established" as a result of the December 29, 2016 investigation, consistent with this opinion.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0052-17T4