# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5400-17T2

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

     Plaintiff-Respondent,

v.

E.R.-M.,

     Defendant-Appellant,

and

C.R., S.G.R.-M, and A.M.,

     Defendants.

_____

IN THE MATTER OF B.R.,
S.M., and T.R.,

     Minors.

_____

Submitted May 20, 2020 – Decided June 10, 2020

Before Judges Haas and Mayer.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Essex County, Docket No. FN-07-0273-17.

Joseph E. Krakora, Public Defender, attorney for appellant (Robyn A. Veasey, Deputy Public Defender, of counsel; Amy Elizabeth Vasquez, Designated Counsel, on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent (Jane C. Schuster, Assistant Attorney General, of counsel; Diane L. Scott, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minor B.R. (Linda Vele Alexander, Designated Counsel, on the brief).

PER CURIAM

Defendant E.R.-M. (Eric)[1] appeals from a May 12, 2017 fact-finding order, finding that he sexually abused his then six-year old son, B.R. (Ben). We affirm.

Ben, born on June 29, 2010, is the biological child of co-defendant C.R. (Cathy), his mother, and Eric.[2] On October 1, 2016, the local police contacted the New Jersey Department of Child Protection and Permanency (Division) after Eric reported he found a bruise on Ben's face. According to Eric, Cathy

---

[1] We use pseudonyms to protect the parties in accordance with Rule 1:38-3(d).

[2] Eric and Cathy are divorced.

threatened Ben with a belt because Ben was fighting with his younger sister. Ben said his mother waved the belt, it accidentally slipped, and struck him in the face. Ben denied his mother hit him in the past.

The Division investigated and found the allegations against Cathy were "established." As a result, the Division provided in-home services to the family. One month later, the Division received a referral from a counselor who conducted an in-home psychosocial assessment of Ben. As part of the assessment, the counselor asked Cathy if Ben exhibited any sexualized behaviors. Cathy believed Ben had been pulling his penis, causing his penis to become chafed. When Cathy asked her son if he was pulling his penis, Ben said Eric pulled his penis. Ben told his mother the incidents occurred during Ben's visits with his father while Ben showered. On another occasion, Cathy told the counselor she saw Ben "walking funny," and Ben explained his penis hurt because his father was pulling it.

Ben was then interviewed by a Division Intake Investigator, Quiana James. During this interview, Ben denied Eric touched him inappropriately and denied any sexual abuse. However, Ben told the Division's investigator that his penis hurt two or three times, and he told Cathy about those times. Ben was

subsequently examined at a hospital for sexual abuse, but no medical evidence of abuse was found.

On November 9, 2016, during a video-recorded forensic interview with Jocelyn Rivera, Ben disclosed sexual abuse by Eric. He explained Eric touched his "pee," and confirmed the area where his father touched him on an anatomically correct picture. Ben described the manner in which Eric touched him, indicated his father only touched him when the two were alone, and the touching occurred in the living room or bathroom at Eric's house. According to Ben, these touches "made him sad." Ben also told the interviewer that he felt hurt "when [Eric] touches him in a bad way." Ben further explained that when he asked his father to stop, Eric did not stop and denied doing anything improper.

Ben told the forensic interviewer the last time his father touched his penis occurred in July 2018. Ben stated Eric "touched his penis in the bathroom while [Ben] was sitting on the toilet." Ben said his father's touches "made his body feel sad." When Ben returned home, he told his mother about the incident.

A few weeks after the forensic interview, Ben participated in a psychosocial evaluation conducted by Daisy Rimli, a licensed social worker and expert in child abuse and neglect. During Rimli's evaluation, Ben described his father's sexual abuse which mirrored the statement he gave to Rivera. Based on

her evaluation, Rimli concluded Ben was sexually abused by Eric. She opined Ben was "significantly impacted by the sexual abuse he endured by his father and is experiencing feelings of guilt and fear that his father will be incarcerated." Rimli also expressed concern about Cathy's lack of response to Ben's disclosure of his father's sexual abuse.

The Division filed a verified complaint for care and supervision, alleging Eric and Cathy abused, neglected, and endangered the welfare of Ben. The Family Part judge signed the Division's order to show cause for care and supervision of the children and ordered in-home therapy for Ben. The judge allowed Cathy supervised contact with Ben. However, Eric was to have no contact with Ben until further order. In addition, the judge required all pleadings filed in the case to be transcribed into Spanish because English was not Eric's first language.

In a follow up hearing held on January 4, 2017, the judge continued the Division's care and supervision of the children. Eric was allowed to have contact with Ben limited to supervised therapeutic visits.

On March 22, 2017, the judge held a fact-finding hearing. On that date, Cathy "knowingly, willingly and voluntarily admitted . . . [t]here is an ongoing need for services given the issues that persist within the family and the child's

behavioral issues." The judge also rescinded the requirement that Cathy's contact with the children be supervised.

The fact-finding hearing addressing the allegations against Eric could not proceed on March 22 because the Division's report regarding Eric's sexual abuse of Ben, unbeknownst to all counsel, was a preliminary investigation report. The judge then adjourned the hearing to allow the Division to submit a finalized investigation summary.

The judge subsequently continued the fact-finding hearing over three non-consecutive days. The Division's witnesses included: Daisy Rimli, LCSW; Quiana James, a Division investigator; and Jocelyn Rivera, the forensic interviewer. Eric did not present any witnesses.

Rimli testified on behalf of the Division as an expert in child abuse and neglect. Prior to her testimony, defense counsel conducted a voir dire regarding Rimli's qualifications to testify as an expert. After counsel's voir dire, the judge admitted Rimli as an expert in the field of child abuse and neglect.

As part of its proofs, the Division also sought to admit Ben's video-recorded forensic interview with Rivera. The interview was conducted in English and therefore had to be translated into Spanish for Eric to understand the import of the evidence. However, the court interpreter at the fact-finding

6

hearing explained she was not permitted to interpret a video played during the hearing. The judge then asked the Division's attorney if there was a transcript of the video and counsel advised no transcript existed.

The judge explained Eric's due process rights required that he understand everything said during the videotaped interview to present a defense. Eric's attorney objected to the admission of the videotaped interview if the court interpreter was unable provide a simultaneous Spanish translation.

Thereafter, the court interpreter confirmed interpreters were not allowed to transcribe videotaped testimony. The judge then required the Division to transcribe the videotaped forensic interview over defense counsel's objection to any delay of the fact-finding hearing. The judge instructed the Division to obtain a transcript of Ben's forensic interview in Spanish within twenty days and adjourned the trial.

When the parties returned to court for the continued fact-finding hearing on April 27, 2017, the judge asked counsel if there were any unresolved issues before the forensic interviewer testified. Neither counsel raised any issues and the Division moved the videotaped interview into evidence without objection.

At the conclusion of the hearing, on May 12, 2017, the judge provided a detailed oral decision. He summarized the evidence presented and addressed

A-5400-17T2

defense counsel's objections to various evidence. Specifically, the judge allowed both the initial investigation summary and the final investigation summary to be admitted into evidence because Eric's counsel had ample time during the trial recess to address the findings in the final investigation summary.

The judge found Rimli's testimony credible because "[s]he was straightforward with her answers, she made eye contact, she was not defensive, admitted when she had not reviewed something," and "did not try to embellish [Ben's] symptoms." He deemed Rimli's expert opinions presented "a fair approach to information provided during cross-examination and a fair analysis of that information. She reached her conclusions based on all of the information and [indicated] that one inconsistency in the midst of all that information would not change her opinion."

The judge also found Ben's statements regarding Eric's sexual abuse were corroborated by Rimli's testimony According to Rimli, Ben "exhibited signs of trauma," such as "feeling sad about the sexual abuse, not wanting to talk about the sexual abuse . . . , and [becoming] tearful and sad when speaking of the impact of the sexual abuse [on] the relationship with his father, which he described as good." In fact, the judge found Ben's statements about his relationship with his father "is a legitimate manner for a child of that age to

8

describe his emotions and by offering examples of when he also feels that way offers [Ben] credibility."

Regarding Rivera, who conducted the videotaped forensic interview, the judge found her testimony credible because she "did not ask leading or suggestive . . . questions" of Ben during the interview. In addition, the judge determined Rivera "fully explained her interview technique" during the hearing.

In reviewing the testimony of James, the Division's investigator, the judge found her testimony credible because "[s]he was direct in her answers" and "made eye contact with her questioners." The judge also noted James "admitted information [that] was not helpful to" the Division, including Ben's initial denial that his father touched him inappropriately. The judge explained he gave no weight to James' testimony regarding information not included in her report and did not rely on the Division's conflicting investigative reports.

The judge then set forth his factual findings and legal conclusions, determining the Division "sustained its burden by a preponderance of the evidence that [Eric] sexually abused [Ben] in contravention of the statute." The judge explained Eric's "actions amounted to efforts to coerce [Ben] to engage in sexually explicit conduct," N.J.S.A. 9:6-8.84(a); constituted molestation of Ben by accosting him "in a hostile and aggressive manner," N.J.S.A. 9:6-8.84(b); and

9

amounted to sexual contact "defined as an intentional touching by the victim or actor either directly or through clothing of the victim's or actors' intimate parts for the purpose of degrading or humiliating the victim or sexually arousing or gratifying the actor," N.J.S.A. 9:6-8.84(c).

As to Ben's mother, the judge found Cathy failed to provide proper supervision of Ben and exposed him to further risk for sexual abuse.

In a May 12, 2017 fact-finding order, the judge concluded the Division proved by a preponderance of the evidence that Eric and Cathy abused or neglected Ben. He also scheduled future compliance review hearings to ensure Ben's parents complied with the court-ordered service.

In a June 13, 2018 order, the judge terminated the litigation because the "conditions [had] been remediated." Eric and Cathy were awarded joint legal custody of Ben, with Cathy continuing to have physical custody of Ben.

On appeal, Eric raises the following arguments:

I.

TRIAL COUNSEL DID NOT PROVIDE ADEQUATE LEGAL REPRESENTATION TO [ERIC] WHEN COUNSEL FAILED TO OFFER EVIDENCE IN [ERIC]'S DEFENSE ALTHOUGH THE RECORD REFLECTS EXCULPATORY EVIDENCE EXISTED AT THE TIME OF THE FACT-FINDING (Not Raised Below)

A-5400-17T2

II.

TRIAL COUNSEL DID NOT PROVIDE ADEQUATE LEGAL REPRESENTATION TO [ERIC] WHEN COUNSEL STIPULATED TO THE QUALIFICATION[S] OF DAISY RIMLI, LCSW, AS AN EXPERT IN THE AREA OF CHILD ABUSE AND NEGLECT (Not Raised Below).

III.

TRIAL COUNSEL DID NOT PROVIDE ADEQUATE LEGAL REPRESENTATION TO [ERIC] WHEN COUNSEL DID NOT REQUEST A [RULE] 104 HEARING TO CHALLENGE THE TRUSTWORTHINESS OF THE TESTIMONY OF ADMINISTRATIVE ASSISTANT AND FORENSIC INTERVIEWER JOCELYN RIVERA AND THE VIDEOTAPED INTERVIEW OF THE CHILD (Not Raised Below).

IV.

THE RECORD IS DEVOID OF CONFIRMATION THAT THE VIDEOTAPED CHILD INTERVIEW WAS [INTERPRETED] OR TRANSLATED FOR [ERIC] IN ACCORDANCE WITH A.O.C. DIRECTIVE NO. 01-17 (Not Raised Below).

V.

THERE IS INSUFFICIENT EVIDENCE TO SUPPORT A FINDING OF ABUSE OR NEGLECT UNDER N.J.S.A. 9:6-8.21.

We defer to the Family Court's fact-finding because of the court's "special

expertise" in family matters and its "superior ability to gauge the credibility of

11

the witnesses who testify before it." N.J. Div. of Youth & Family Servs. v. F.M., 211 N.J. 420, 448 (2012).  Our review of a court's factual findings in an abuse and neglect case is strictly limited to determining whether those findings are supported by adequate, substantial, and credible evidence in the record.  N.J. Div. of Youth & Family Servs. v. Z.P.R., 351 N.J. Super. 427, 433 (App. Div. 2002).

Parents charged with civil abuse and neglect in Title Nine cases have a constitutional right to counsel under Article I, paragraph 1 of the New Jersey Constitution, and a statutory right under N.J.S.A. 9:6-8.43(a).  N.J. Div. of Child Prot. & Permanency v. G.S., 447 N.J. Super. 539, 555 (App. Div. 2016).  In determining effectiveness of a parent's attorney in cases filed by the Division, we apply the two-part test set forth in Strickland v. Washington, 466 U.S. 668, 694 (1984) and adopted by the New Jersey Supreme Court in State v. Fritz, 105 N.J. 42, 58 (1987).  See N.J. Div. of Youth & Family Servs. v. B.R., 192 N.J. 301, 307 (2007). To succeed on a claim of inadequate legal representation, a parent must demonstrate: (1) counsel's performance was objectively deficient; and (2) the deficient performance prejudiced the defense such that results of the proceeding would have been different.  G.S., 447 N.J. Super. at 555 (citing Strickland, 466 U.S. at 687).

We review a court's evidentiary rulings under an abuse of discretion standard. N.J. Div. of Child Prot. & Permanency v. N.T., 445 N.J. Super. 478, 492 (App. Div. 2016) (citing State v. Kuropchak, 221 N.J. 368, 385 (2015)). We reverse discretionary determinations on the admissibility of evidence only "when the trial judge's ruling was 'so wide of the mark that a manifest denial of justice resulted.'" N.J. Div. of Youth & Family Servs. v. M.G., 427 N.J. Super. 154, 172 (App. Div. 2012) (quoting State v. Carter, 91 N.J. 86, 106 (1982)).

We first consider Eric's argument that his counsel failed to provide him adequate legal representation in three instances: counsel's failure to offer exculpatory evidence; counsel's stipulation to Rimli's qualifications; and counsel's failure to request a N.J.R.E. 104 hearing regarding Rivera's testimony.

Eric argues his trial counsel failed to present exculpatory evidence at the fact-finding hearing because his attorney did not call the investigator who took the statement in which Ben denied any abuse by his father as a witness for the defense. Based on our review of the hearing transcripts, this issue was raised and highlighted several times during the trial. In rendering his decision, the judge considered Ben's initial denial of abuse by his father. Because the judge considered Ben's initial statement, defense counsel did not need to present the testimony of that witness.

13

Nor was defense counsel's decision to forego having Eric's treating therapist testify evidence of inadequate legal representation. The therapist treated Eric after the abuse was discovered. Therefore, the witness could only offer testimony as to his present opinion regarding Eric's therapeutic progress and not past behaviors.

Eric next argues his trial attorney failed to challenge the qualifications of Daisy Rimli as an expert witness. The record fails to support Eric's contention. Based on the transcript, Eric's attorney conducted voir dire of Rimli prior to the judge qualifying her as an expert witness. Counsel examined Rimli on the type and number of evaluations she performed in her career as well as the number of times she testified in court as an expert witness. Eric failed to suggest how further questioning of Rimli's qualifications or her educational background would have resulted in a more favorable outcome. To the contrary, it is likely Eric's attorney was aware that further exploration of Rimli's qualifications through extensive voir dire questioning would strengthen her credibility as an expert, which would have been detrimental to Eric's defense.

We next consider Eric's claim that his trial counsel should have requested an N.J.R.E. 104 hearing prior to the testimony of Jocelyn Rivera, the forensic interviewer. According to Eric, if a N.J.R.E. 104 hearing had been conducted,

14

the evidence "would . . . not have withstood the scrutiny of credible evidence based upon the sparse credentials of the interviewer and the inability to make credibility determinations of the child based on the disqualification of the interviewer." However, a N.J.R.E. 104 hearing was not required because Rivera did not testify as an expert witness for the Division. Rivera, in her capacity as a fact witness, provided the foundation for admission of Ben's video recorded forensic interview.

The manner in which an attorney addresses evidence and witnesses presented to the court is a matter of trial strategy and cannot form the basis for a claim of inadequate legal representation. See State v. Arthur, 184 N.J. 307, 320-21 (2005); N.J. Div. of Youth & Family Servs. v. B.H., 391 N.J. Super. 322, 347-48, 351 (App. Div. 2007). Eric's attorney vigorously cross-examined the Division's witnesses. In addition, defense counsel made timely objections to evidence she believed to be improper. Having reviewed the record, we are satisfied Eric's attorney provided more than adequate legal representation. Even if counsel's performance was inadequate, Eric failed to demonstrate how his attorney's inadequacies prejudiced his defense.

We next consider Eric's argument that his right to due process was violated because there was no Spanish transcript of Ben's videotaped forensic interview.

Here, the judge required the Division to ensure Eric's rights were protected by recessing the trial and instructing the Division to provide a Spanish transcript of the interview within twenty days. When the fact-finding hearing resumed, the judge asked if the parties had any outstanding issues prior to Rivera, the interviewer, testifying. Neither counsel advised the judge of any outstanding issues. The Division moved the videotaped interview into evidence, and Eric's attorney did not object.

In a November 21, 2019 order, we allowed the Division to supplement the record on appeal in response to Eric's argument that the "record is devoid of confirmation that the videotaped child interview was interpreted or translated for the father in accordance with A.O.C. Directive No. 01-17." In lieu of providing a transcript of the interview in Spanish, the Division's attorney sent an email to all counsel confirming a copy of the videotape would be provided to the court interpreter's unit in advance of the continued hearing, the interpreter would preview the videotape, and the interpreter would then interpret the videotape in real time when the parties returned to court. Because all counsel agreed to this procedure, there was no objection to playing the videotaped forensic interview during the fact-finding hearing. We are satisfied Eric's due process rights were not violated because he had the benefit of a simultaneous

interpretation of the forensic interview, in Spanish, when the videotape was played in court.

We turn to Eric's claim that the evidence was insufficient to support a finding of abuse or neglect under N.J.S.A. 9:6-8.21. We disagree.

The Division is required to demonstrate by a preponderance of the evidence that Ben was abused or neglected as defined within Title 9. See N.J.S.A. 9:6-8.46(b). When a parent "commits or allows to be committed an act of sexual abuse against the child," a finding of abuse or neglect may be entered. N.J.S.A. 9:6-8.21(c)(3).

In cases involving child abuse and neglect, hearsay statements by children regarding the abuse and neglect are permitted provided the statements are corroborated. N.J.S.A. 9:6-8.46(a)(4). The corroborating evidence need only support the child's out-of-court statements, either by direct or circumstantial evidence, and does not need to be unassailable or conclusive. N.J. Div. of Child Prot. & Permanency v. N.B., 452 N.J. Super. 513, 521-22 (App. Div. 2017). The corroborating evidence "need not relate directly to the alleged abuser" because such evidence is extremely rare in a child abuse case. Z.P.R., 351 N.J. Super. at 436. We have held corroborating evidence includes "a child victim's

precocious knowledge of sexual activity." Ibid. (quoting State v. Swan, 790 P.2d 610, 615-16 (1990)).

Eric argues there is no corroborating evidence of Ben's statements in this case. We are satisfied Ben's statements of sexual abuse by his father were sufficiently corroborated. When Cathy saw Ben pull on his penis, Ben reported that was what Eric did to him. Ben was six years old at the time he reported his father's behavior to Cathy, and the judge deemed Ben's statement was evidence of age-inappropriate sexual behavior sufficient to corroborate the allegations of sexual abuse. In addition, Ben described to the forensic interviewer exactly how Eric pulled his penis and the locations where the abuse occurred. The judge also found Rimli's testimony, based on her psychosocial evaluation of Ben, amply corroborated Ben's statements to support a finding that Eric sexually abused his son.

The Family Part judge rendered a detailed decision from the bench setting forth the facts and the applicable law. He summarized the documentary evidence and testimony presented at the hearing. He set forth the weight he assessed to each item of evidence considered. He also made detailed credibility findings as to each witness. The judge's reasons were thoughtful and complete and warrant our deference. In sum, the Family Part judge appropriately

evaluated the evidence presented, made findings of fact supported by the credible evidence in the record, and correctly applied controlling law. Given our own review of the record and the deferential standard with which we undertake that review, we discern no basis to overturn the judge's finding that Eric abused or neglected his son.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION