# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS. A-2879-18T3
                 A-2880-18T3

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

       Plaintiff-Respondent,

v.

A.A. and Z.S.,

       Defendants-Appellants.

_____

IN THE MATTER OF S.A., H.A.,
L.A., and N.A., minors.

_____

           Submitted December 14, 2020 - Decided  January 25, 2021

           Before Judges Sabatino, Currier and Gooden Brown.

           On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Bergen County, Docket No. FN-02-0155-14.

           Joseph E. Krakora, Public Defender, attorney for appellant A.A. (Robyn Veasey, Deputy Public

Defender, of counsel; Adrienne Kalosieh, Assistant Deputy Public Defender, on the briefs).

Joseph E. Krakora, Public Defender, attorney for appellant Z.S. (Robyn Veasey, Deputy Public Defender, of counsel; Beth Anne Hahn, Designated Counsel, on the briefs).

Gurbir S. Grewal, Attorney General, attorney for respondent (Jane C. Schuster, Assistant Attorney General, of counsel; Arriel J. Rubinstein, Deputy Attorney General, and Sara M. Gregory, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minors L.A. and N.A. (Margo Hirsch, Designated Counsel, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minor H.A. (David Valentin, Assistant Deputy Public Defender, of counsel and on the brief).

PER CURIAM

This case comes before us for a second time. Because we find the Family Part erred in not conducting a N.J.R.E. 104 hearing to address the admissibility of newly discovered evidence and relied on Child Sexual Abuse Accommodation Syndrome (CSAAS) testimony now deemed unreliable under State v. J.L.G.,[1] 234 N.J. 265, 272 (2018), we are constrained to remand for

---

[1] The Supreme Court gave J.L.G. pipeline retroactivity in State v. G.E.P., 243 N.J. 362, 386-89 (2020).

further proceedings as directed.  We need not reiterate all of the facts as they are set forth in our prior decision,[2] but only refer to those necessary for the reader's clarity.

<u>The Factfinding Decision</u>

After a factfinding hearing, the trial court found both defendants neglected and abused their daughter H.A.[3] (Holly) within the meaning of N.J.S.A. 9:6-8.21(c).  The court found defendant A.A. (Arthur) sexually abused Holly, then-sixteen-years-old, and defendant Z.S. (Zara) failed to protect her.[4]  The court's September 2014 decision relied in part on the testimony of two experts who attributed Holly's inconsistent behavior, delay in reporting the abuse, and recantations of the allegations against her father to CSAAS.

The day before the factfinding hearing began in June 2014, Holly texted a friend, stating she had been sexually assaulted by four men who "forced her to perform oral sex on them," and that they "videotaped the entire encounter."

---

[2] <u>N.J. Div. of Child Prot. & Permanency v. Z.S.</u>, No. A-1132-16, No. A-1133-16 (App. Div. July 5, 2018).

[3] We use initials and pseudonyms to protect the privacy of the family.  <u>R.</u> 1:38-3.

[4] The married couple have five children altogether.  One child reached the age of majority prior to the factfinding hearing and was dismissed from the litigation.

A-2879-18T3

Although the New Jersey Division of Child Protection and Permanency (Division) detailed its investigation in a Special Response Unit Report (Report), the Report was never provided to defendants or their counsel despite a court order to do so.

### The Motion to Vacate

In March 2015, defendants moved under Rule 4:50-1 to vacate the factfinding order based on newly discovered evidence. Holly had recanted her June 2014 allegations regarding the sexual assault by four men. Because the Division had not divulged the Report, defendants asserted they were deprived of the opportunity to question Holly about the allegations. In addition, Holly had recanted her allegations of abuse by her father to her brother in February 2015.[5] Zara also asserted in a certification that Holly had told two siblings during a visit that "the allegations she made against their father were not true and that she 'lied to everyone.'"

The trial court denied this motion in a June 17, 2015 order and written decision. The judge confirmed that her findings were "based on reliable and credible testimony from Dr. Biller, an expert on [CSAAS]." She stated she

---

[5] The email from Holly to her brother sent on February 25, 2015 stated: "hi this is [Holly] and i want to tell you that i lied about the situation with my dad and i REALLY REALLY want to go home with my family."

considered Holly's previous recantations in light of Dr. Biller's testimony and "determined that they were 'not fatal to this finding[,]'" and also relied on Dr. D'Urso's "credible, unrebutted testimony" that clinically supported sexual abuse.[6] The judge reiterated she had relied on Holly's testimony regarding the sexual abuse and found her to be "very credible."

In addressing the Report, the judge stated the only issue was its relevance to the factfinding matter. She noted the Division's arguments that the Report was not relevant and was inadmissible at trial because it did not establish that Holly made false statements. The judge stated that the Report concluded Holly was safe in her foster home and the prosecutor's office had decided not to pursue a criminal investigation. The Report did not address whether Holly's allegations were fabricated. The court also found that since the allegations contained in the Report were known to defendants at the time of the factfinding hearing, defendants had ample opportunity to cross-examine Holly about them.

The court further concluded that the e-mail Holly sent to her brother recanting her allegations of abuse would not have controlled or altered the court's findings. The judge stated she "simply [could not] find that the

---

[6] Brett Biller is a clinical psychologist qualified by the Family court judge as an "expert in [CSAAS]." Anthony D'Urso is a psychologist with an emphasis and specialization in child abuse and neglect cases.

recantation [was] 'probably true and the trial testimony is probably false.'" Therefore, the court denied the motion to vacate the factfinding order.

Following the factfinding hearing, Holly continued to live in foster care and treatment homes until the Division adopted a permanency plan of independent living when she was seventeen years old. Arthur was prohibited from living in the family home and was only permitted to visit the other children in public places and under the supervision of Zara.

After Holly turned eighteen, the court dismissed her from the litigation in December 2015. On October 6, 2016, the court entered an order terminating litigation because "there are no safety or risk issues for the minors in the physical custody of the mother [and] with the father's contact remaining supervised (father consents to dismissal with restraints)."

The First Appeal

Defendants appealed from the factfinding order. They contended that the Division failed to prove abuse and neglect by a preponderance of the evidence and that the court abused its discretion in denying their motion to vacate and reconsider the factfinding order based on newly discovered evidence. In addition, Arthur argued that the court unlawfully restricted his contact with his other children as there was no finding that he posed a risk to them.

A-2879-18T3

In considering defendants' arguments, this court concluded that the procedural posture of the case rendered the factfinding order interlocutory and not a final judgment. Therefore, the enhanced requirement under Rule 4:50-1 to show proof of "exceptional and compelling circumstances to warrant relief was not the proper standard." Z.S., slip op. at 18. As a result, we remanded for the trial court to reconsider the interlocutory order and review the motion for reconsideration under the appropriate standard. Id. at 20.

### The Remand Decision

On remand, the same Family Part judge considered defendants' motion to vacate under Rule 4:42-2, reconsideration of interlocutory orders, as opposed to Rule 4:50-1, reconsideration of final orders. Defendants requested the court either vacate the factfinding order or reopen the record for further hearings. Arthur contended he was entitled to cross-examine Holly about her allegations in the Report, he requested updated evaluations and asked the court to compel Dr. D'Urso to testify whether the new information would have changed his opinion. In addition, defendants asked the court to disregard the experts' CSAAS testimony presented at the factfinding hearing in light of the Supreme Court's ruling in J.L.G. The Law Guardian for the two younger children joined

7

in the motions for reconsideration.[7] The court declined defendants' request for a new evidentiary hearing and decided the motion for reconsideration solely on the resubmission of the prior papers and argument of counsel.

Following the remand, on January 8, 2019, the trial court issued an order and written decision denying defendants' motions to vacate the September 2, 2014 factfinding order. The court found the Report was inadmissible under N.J.R.E. 608 and 405(a). The judge further stated that J.L.G. did not preclude her from considering expert testimony on CSAAS to explain delayed or piecemeal disclosure which "[was] exactly what the court did in this case." She reiterated that she placed "the greatest amount of weight on the credible testimony of [Holly], the testimony of witnesses and documentary evidence which corroborated [Holly's] account, and the uncontroverted, credible expert testimony of Dr. D'Urso."

In conclusion, the court found there was "nothing in the record which would move [it] to reconsider its determination of its factfinding opinion issued on September 2, 2014 in the interests of justice." Moreover, "the interests of justice dictate against vacating the court's factfinding decision or otherwise re-

---

[7] An additional sibling had reached the age of majority prior to this point and was dismissed from the litigation.

A-2879-18T3

opening the record for further proceedings—such an action would only serve to re-victimize a young person who is struggling with the aftermath of abuse and who has been put through enough."

The Current Appeal

In this appeal after remand, defendants contend that the Family Part erred in denying the motion for reconsideration because the court relied on impermissible CSAAS evidence contrary to the ruling in J.L.G. and failed to hold a Rule 104 hearing to determine the admissibility of the newly discovered evidence of additional allegations and recantations. The Law Guardian for the two minor children appeals the application of the finding of abuse and neglect to them because there was no evidence to support the determination. Arthur also appeals from the continued restrictions on his parenting time with the minor children and the prohibition from the family home because there was no finding of risk regarding the other two children.

We review a trial court's evidentiary rulings under an abuse of discretion standard. N.J. Div. of Child Prot. & Permanency v. B.O., 438 N.J. Super. 373, 385-86 (App. Div. 2014). We generally grant trial courts "[c]onsiderable latitude" in determining whether to admit evidence and we do not substitute our judgment for that of the trial court. N.J. Div. of Child Prot. & Permanency v.

N.T., 445 N.J. Super. 478, 492 (App. Div. 2016) (alteration in original). We reverse discretionary evidentiary rulings in Title Nine cases only "when the trial judge's ruling was 'so wide of the mark that a manifest denial of justice resulted.'" N.J. Div. of Youth & Fam. Servs. v. M.G., 427 N.J. Super. 154, 172 (App. Div. 2012) (quoting State v. Carter, 91 N.J. 86, 106 (1982)).

N.J.R.E. 702 provides that an expert witness may testify, in the form of an opinion or otherwise, when "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue[.]" There are three basic requirements for expert testimony to be admitted:

> (1) [T]he intended testimony must concern a subject matter that is beyond the ken of the average juror; (2) the field testified to must be at a state of the art such that an expert's testimony could be sufficiently reliable; and (3) the witness must have sufficient expertise to offer the intended testimony.
>
> [State v. Kelly, 97 N.J. 178, 208 (1984).]

To meet the reliability requirement, the mode of analysis "must have a sufficient scientific basis to produce uniform and reasonably reliable results so as to contribute materially to the ascertainment of the truth." Id. at 210.

Previously, our Supreme Court permitted the admission of expert testimony on CSAAS "to describe traits found in victims of [sexual abuse] to

aid jurors in evaluating specific defenses." G.E.P., 243 N.J. at 369 (quoting State v. J.Q., 130 N.J. 554, 556 (1993)). "CSAAS includes five 'preconditions' that purportedly explain behaviors exhibited by sexually abused children: secrecy; helplessness; entrapment and accommodation; delayed, conflicted, and unconvincing disclosure, and retraction." Ibid.

However, in J.L.G., the Court noted that the American Psychiatric Association, the American Psychological Association, and the Diagnostic and Statistical Manual of Mental Disorders (DSM-5) did not recognize CSAAS. 234 N.J. at 272. Therefore, CSAAS did not have a sufficiently reliable basis in science to allow experts to testify about the syndrome. Ibid. However, the Court also noted "there is consistent and long-standing support in the scientific literature that most child victims of sexual abuse delay disclosure." Id. at 294. Accordingly, the Court limited the use of CSAAS expert evidence to only allow testimony addressing delayed disclosure, specifying that "testimony should not stray from explaining that delayed disclosure commonly occurs among victims of child sexual abuse, and offering a basis for that conclusion." Id. at 303. The Court further instructed that the facts of each case would determine whether delayed disclosure was "beyond the ken of the average juror[,]" in keeping with Rule 702. Id. at 305.

In August 2020, the Supreme Court held that its ruling in J.L.G. should be accorded "pipeline retroactivity." G.E.P., 243 N.J. at 386-89. That is, J.L.G.'s holding that CSAAS evidence could not be admitted at trial—except for certain testimony on delayed disclosure—"should apply not only in all new trials, but also in any cases that were on direct appeal at the time." Ibid. The Court acknowledged that it was "mindful" of the "survivors' interests[,]" and found them compelling, but the Court could not "place their well-founded concerns about having to testify again above a defendant's right to a fair trial." Id. at 389.

The Court further stated that even if CSAAS testimony was improperly admitted, it may be harmless error if the victim's allegations were corroborated by independent evidence. Id. at 390-93. On the other hand, if the State's case was based solely or largely on CSAAS expert testimony, the testimony was clearly capable of producing an unjust result if not corroborated by independent evidence. Id. at 391-93.

On remand, the Family Part declined to reopen the factfinding hearing and revisit the CSAAS testimony. Although the Court had not yet decided G.E.P. and applied pipeline retroactivity to J.L.G, it had nevertheless sharply curtailed the use of CSAAS testimony. This court remanded for the trial judge to reconsider her prior decision in light of her reliance on CSAAS testimony. Her

A-2879-18T3

failure to do so was a mistaken exercise of discretion. We therefore are constrained to remand once again. Since this matter is again on appeal, G.E.P. requires a reconsideration of any reliance on CSAAS expert testimony.

Here, Drs. Biller and D'Urso provided expert testimony at the factfinding hearing. Dr. Biller was qualified purely as a CSAAS expert and provided testimony as to each of the five preconditions encompassed within the syndrome. While he did not provide opinions specifically related to the facts of this case, he addressed hypothetical situations similar to the circumstances presented here.

Dr. D'Urso's expert testimony also addressed CSAAS and he applied it directly to the facts of Holly's circumstances. He provided opinions and explanations as to why Holly gave piecemeal or contradictory disclosures—because she was "testing the waters," as he put it, and informed the court that Holly would disclose more details if the person she was telling responded in a supportive manner. He also provided an explanation as to why Holly recanted multiple times, relying on CSAAS as an explanation for her contradictory statements.

In her September 2, 2014 factfinding determination, the trial judge explicitly relied on the CSAAS expert testimony in finding that defendants

abused and neglected Holly. The court found that Holly's "delay in reporting, her piecemeal disclosures, her recantations, and her 'inconsistencies'" were not fatal to the court's findings. The court referred to Dr. Biller's CSAAS testimony discussing coercion or accommodation, noting the expert's statements that those preconditions were likely to occur in rule-orientated and obedience-based families like Holly's. The factfinding decision also relied on the precondition of secrecy, with the court stating that it could "absolutely be observed on this record through an implied threat from the parents[,]" and postulating that Zara persuaded Holly to recant her allegations and keep them secret. Because the judge relied on all of the CSAAS preconditions and not just the permitted references to delayed disclosure, her failure to reconsider her earlier decision was error.

On remand, the judge stated that she "placed the greatest amount of weight on the credible testimony of [Holly], the testimony of witnesses and documentary evidence which corroborated [Holly's] account, and the uncontroverted, credible expert testimony of Dr. D'Urso." However, the only physical evidence presented at trial were some phone records from Zara's cell phone. Therefore, the judge used only the CSAAS expert testimony to explain

and justify Holly's inconsistencies and recantations. Since that testimony has been deemed unreliable, the court's decision cannot stand.

As stated, due to the trial court's continued reliance on impermissible CSAAS testimony, we must reverse and remand for the court to hold another factfinding hearing without consideration of CSAAS evidence outside of the delayed disclosure evidence.

Prior to the factfinding hearing, the judge should conduct a Rule 104 hearing to determine the admissibility of the impeachment evidence defendants sought to introduce through the Report, the email sent by Holly to her brother and the statements Holly made to her siblings recanting her allegations.

In State v. Guenther, 181 N.J. 129, 154 (2004), the Supreme Court created a narrow exception to N.J.R.E. 608, which precludes evidence of specific instances of conduct, other than to prove a witness's truthfulness or untruthfulness. The Court held that "in limited circumstances and under very strict controls a defendant has the right to show that a victim-witness has made a prior false criminal accusation for the purpose of challenging that witness's credibility." Ibid. "That a victim-witness uttered a prior false accusation may be no less relevant, or powerful as an impeachment tool, than opinion testimony that the witness has a reputation for lying." Id. at 155. However, the Court

stated that "if not strictly regulated," then proving a prior false accusation, "could cause the very type of sideshow trial that N.J.R.E. 608 was intended to prevent." Ibid. Nevertheless, the Court opined that in certain cases, it "believe[d] that the interests of justice require that [the Court] relax the strictures against specific conduct evidence in N.J.R.E. 608." Ibid.

This exception has since been codified in N.J.R.E. 608(b), and "applies when the credibility of the victim-witness is the central issue in the case." State v. A.O., 198 N.J. 69, 93 (2009).[8] The Supreme Court has also extended the Rule 608 exception to apply to false allegations made after the underlying accusations. Ibid. The logic that "false criminal allegations may be relevant to the witness's credibility . . . applies with equal force to false criminal allegations made soon after the primary allegation." Ibid. The Court recognized that "a false accusation after an event, if closer in time, can be even more probative than a prior false allegation." Ibid.

---

[8] N.J.R.E. 608(b)(1) provides:

> In a criminal case, a witness' character for truthfulness may be attacked by evidence that the witness made a prior false accusation against any person of a crime similar to the crime with which defendant is charged if the judge preliminarily determines, by a hearing pursuant to [N.J.R.E.] 104(a), that the witness knowingly made the prior false accusation.

16

Moreover, courts should hold a Rule 104 hearing to determine the admissibility of evidence of a prior false accusation and whether defendants have shown by a preponderance of the evidence that the victim-witness made a prior accusation charging criminal conduct and that it was false.  Guenther, 181 N.J. at 157.  The Court established certain factors for a court to use when deciding whether a false accusation is admissible.  Ibid.

On remand from this court, the judge concluded without a hearing, that defendants had not proven that Holly's accusations in the Report were false. Therefore, the court did not address the Guenther factors and did not allow defendants to use the contents of the Report or question Holly or any of the witnesses about it.  However, there were questions regarding the DNA evidence, as well as the lack of an explanation regarding the decision not to prosecute.  In addition, defendants sought to explore the detective's comments in the Report that Holly's statements were "hard to believe[,]" "there were holes in [Holly's] story," and the police investigating the allegations "reported having doubts about her story."

Holly's credibility is a critical issue in this case.  Defendants were deprived of the opportunity to question that credibility when the trial court refused to allow questioning of the Report, and of the statements Holly made to

A-2879-18T3

her siblings and the email recanting her allegations. Under <u>Guenther</u> and Rule 608, a Rule 104 hearing is required to determine the admissibility of that evidence.

On remand, we also direct the court to consider Arthur's contention that the court erred in dismissing the litigation, permanently barring him from the family home and continuing the parenting time restraints as to the two remaining minor children. There was no factfinding regarding the relationship between Arthur and the two younger children. As so much time has passed since the original determination, the parties may present updated information regarding the children. In addition, the argument may be moot depending on the court's determination regarding the abuse and neglect allegations after disregarding the impermissible CSAAS testimony and considering the new evidence, if deemed appropriate.

Finally, because the trial judge has made credibility determinations regarding Holly, defendants and the experts, we direct the Assignment Judge to assign a new judge to handle the case on remand.

Reversed and remanded for further proceedings in accordance with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

18

A-2879-18T3