# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3330-20

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

     Plaintiff-Respondent,

v.

T.U.R. and J.F.,

     Defendants,

and

K.C.,

     Defendant-Appellant.

_____

IN THE MATTER OF THE
GUARDIANSHIP OF K.A.T.R.
and K.A.M.C., minors.

_____

Submitted June 7, 2022 – Decided June 20, 2022

Before Judges Fisher and Smith.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Essex County, Docket No. FG-07-0068-20.

Joseph E. Krakora, Public Defender, attorney for appellant (Patricia Nichols, Assistant Deputy Public Defender, of counsel and on the briefs).

Matthew J. Platkin, Acting Attorney General, attorney for respondent (Donna Arons, Assistant Attorney General, of counsel; Nicholas Dolinsky, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minors (Meredith Alexis Pollock, Deputy Public Defender, of counsel; Melissa R. Vance, Assistant Deputy Public Defender, of counsel and on the brief).

PER CURIAM

I.

T.U.R. (Tamar) and K.C. (Kevin) are the biological parents of K.A.M.C. (Kay), who was born December 24, 2015.[1]  Tamar executed a voluntary surrender of Kay on December 9, 2020, and she is not a party to this appeal. Kevin appeals the Family Part's June 30, 2021 order and judgment terminating his parental rights to Kay.  After carefully reviewing the record in view of the applicable legal principles, we reject Kevin's contentions and affirm.

---

[1]  We use initials and fictitious names to protect the identity of the parties and family members.  R. 1:38-3(d)(12).

The Division of Child Protection and Permanency (Division) became involved with Kay in November 2017 when it instituted a safety protection plan (SPP) because of its concerns about Tamar's ability to care for Kay and her sister, Kim.[2]  The Division's concerns arose when Tamar began displaying deficits in her mental health and cognitive functioning.  While she remained the primary caregiver for Kim and Kay, the SPP required Tamar to be supervised with her children at all times by other approved family members.  When Tamar violated the SPP in December 2017 by taking her children with her to a friend's home unsupervised, the Division executed a Dodd removal, placing Kay and Kim in a resource home.[3]

After the Dodd removal, the Division ordered Kevin to attend a series of screening and evaluation appointments.  He was permitted three supervised visitations per week with Kay.  On January 30, 2018, Kevin was arrested and charged with possession of a controlled substance, to which he pled guilty and was sentenced to two years of probation.  During the remainder of 2018, Kevin repeatedly missed his evaluation appointments, consequently the court

_____

[2]  Kim is not the biological child of Kevin.  She is not a party to this litigation.

[3]  A "Dodd removal" refers to the emergency removal of a child from a home without a court order as authorized by the Dodd Act.  N.J.S.A. 9:6-8.21 to -8.82.

suspended Kevin's visitation with Kay. By mid-summer, the Division caseworker assigned to the matter had lost contact with him.

Nonetheless, the trial court rejected the Division's termination plan in February 2019, giving Kevin fresh opportunities to re-engage with services. To that end, he completed a psychological evaluation with Dr. Alison Winston, Ph.D. Dr. Winston administered a series of tests designed to inventory and assess the subject's personality, parenting skills, and potential for child abuse. Based on the test results, Dr. Winston recommended supervised visitation, as well as treatment programs targeted to mental health, substance use disorders and individual psychotherapy.

In March 2019, Kevin began attending supervised visits with Kay. Unfortunately, by late May, Kevin stopped visiting his child, and the rest of 2019 passed by without any further visits or communication between father and daughter. In addition to missing his visits with his daughter, Kevin failed to complete any of the services recommended by Dr. Winston.

In November 2019, the trial court conducted a permanency hearing and approved the Division's plan for termination of parental rights followed by adoption. It found that after two years of litigation, Kevin still lacked the ability

to parent Kay despite the Division's reasonable efforts to effectuate reunification.

The Division filed its complaint for guardianship on January 17, 2020, naming Kevin as a co-defendant. Mark Singer, Ph.D., conducted a bonding evaluation of Lana[4] and Kay, however he could not complete a bonding evaluation of Kevin and Kay because Kevin failed to attend the appointment.

At the trial, the Division presented two witnesses, Division worker Tanisha Campbell and Dr. Singer. Kevin presented no evidence or witnesses. The trial court found Campbell credible and qualified Dr. Singer as an expert over the objections of Kevin's counsel. The court made extensive factual findings based on the documentary evidence submitted by the Division as well as the testimony of Campbell. It found Dr. Singer's testimony "to be clearly consistent" with those factual findings and determined that his opinions and findings "conformed to his experience and demonstrated knowledge in [his] field." Ultimately, the court credited his testimony given at trial.

On July 21, 2021, the trial court issued a written decision, terminating Kevin's parental rights and finding that the Division met all four prongs of N.J.S.A. 30:4C-15.1(a) by clear and convincing evidence. Kevin appealed,

---

[4] Lana is the maternal great grandmother of Kay and Kim.

arguing that the trial court erred by: (1) misapplying the law as it related to him, a "non-target" parent, and (2) admitting the testimony of Dr. Singer, whom Kevin argues should not have qualified as an expert.

II.

The legal framework regarding the termination of parental rights is well-settled. Parents have a constitutionally protected right to the care, custody and control of their children. Santosky v. Kramer, 455 U.S. 745, 753 (1982); In re Guardianship of K.H.O., 161 N.J. 337, 346 (1999). However, that right is not absolute. N.J. Div. of Youth & Fam. Servs. v. R.G., 217 N.J. 527, 553 (2014); N.J. Div. of Youth & Fam. Servs. v. A.W., 103 N.J. 591, 599 (1986). At times, a parent's interest must yield to the State's obligation to protect children from harm. N.J. Div. of Youth & Fam. Servs. v. G.M., 198 N.J. 382, 397 (2009); In re Guardianship of J.C., 129 N.J. 1, 10 (1992). To effectuate these concerns, the Legislature created a test for determining when parental rights must be terminated in a child's best interests. In order to obtain parental termination, N.J.S.A. 30:4C-15.1(a) requires the Division prove by clear and convincing evidence the following four prongs:

> (1) The child's safety, health, or development has been or will continue to be endangered by the parental relationship;

A-3330-20

(2) The parent is unwilling or unable to eliminate the harm facing the child or is unable or unwilling to provide a safe and stable home for the child and the delay of permanent placement will add to the harm;

(3) The [D]ivision has made reasonable efforts to provide services to help the parent correct the circumstances which led to the child's placement outside the home and the court has considered alternatives to termination of parental rights; and

(4) Termination of parental rights will not do more harm than good.

[See also A.W., 103 N.J. at 604-11.]

The four prongs of the test are not "discrete and separate" but "relate to and overlap with one another to provide a comprehensive standard that identifies a child's best interests." K.H.O., 161 N.J. at 348. "The considerations involved in determinations of parental fitness are 'extremely fact sensitive' and require particularized evidence that address the specific circumstances in the given case." Ibid. (quoting In re Adoption of Child. by L.A.S., 134 N.J. 127, 139 (1993)).

Our review of a family court's factual findings is limited. Cesare v. Cesare, 154 N.J. 394, 411 (1998). "When a biological parent resists termination of his or her parental rights, the [trial] court's function is to decide whether that parent has the capacity to eliminate any harm the child may already have

7

suffered, and whether that parent can raise the child without inflicting any further harm." N.J. Div. of Youth & Fam. Servs. v. R.L., 388 N.J. Super. 81, 87 (App. Div. 2006).

We accord deference to fact-findings of the Family Part "because it has the superior ability to gauge the credibility of the witnesses who testify before it and because it possesses special expertise in matters related to the family." N.J. Div. of Youth & Fam. Servs v. F.M., 211 N.J. 420, 448 (2012) (citing Cesare, 154 N.J. at 413). "We recognize that the cold record, which we review, can never adequately convey the actual happenings in a courtroom." Ibid. (citing N.J. Div. of Youth & Fam. Servs. v. E.P., 196 N.J. 88, 104 (2008)). We will not overturn a family court's fact-findings unless they are so "wide of the mark" that our intervention is necessary to correct an injustice. Ibid. (quoting N.J. Div. of Youth & Fam. Servs. v. G.L., 191 N.J. 596, 605 (2007)). It is not our place to second-guess or substitute our judgment for that of the Family Part, provided that the record contains substantial and credible evidence to support the decision to terminate parental rights. Id. at 448-49.

### III.

We affirm substantially for the reasons set forth in the cogent and detailed fifty-eight-page opinion of Judge Linda Lordi Cavanaugh, who found that the

Division proved each element of N.J.S.A. 30:4C-15.1(a) by clear and convincing evidence. We briefly address Kevin's points on appeal.

Kevin argues that as a "non-target" parent, that is, the parent who was not the subject of the Dodd removal action, he should have been given "primacy of consideration for placement of his child, especially as [the Division] had already concluded Tamar was not a viable option." Kevin further argues that the trial court's failure to consider him first as a placement option somehow tainted the rest of its parental rights termination analysis under N.J.S.A. 30:4C-15.1(a)(1) to (4). We are not persuaded. While Kevin was never selected by the Division as a placement option for Kay, the Division spent more than two years attempting to engage Kevin with recommended services designed to equip him with parenting tools. The record shows that Kevin repeatedly rejected the Division's efforts, failing to appear for supervised visits with Kay, skipping appointments for drug screenings, psychological evaluations, and even turning away a home evaluator who came to his residence.

While Kay was not initially removed from his home, Kevin was named as a defendant in the guardianship complaint. He participated through counsel at trial. After trial, the court made findings and properly applied the law to each

9

prong of the statute in reaching its conclusion. We find no "misapplication" of the law.

Kevin next argues that the trial court erred by permitting Dr. Singer to testify as an expert in psychology and bonding when Dr. Singer was not qualified to do so. The record shows that Dr. Singer is a licensed psychologist with a practice in New Jersey since 1999. He holds a doctorate from Rutgers University in counseling psychology with a specialization in multicultural counseling. He testified to his experience in child custody matters and noted that he deals with cases inside and outside the child protective system. He testified that approximately eighty percent of his work involved evaluations, and about twenty percent involved therapy. He further estimated that about half of his therapy clients are involved with child protective service matters. Finally, he estimated that he testifies approximately twenty-five times a year in matters specifically involving the "potential termination of parental rights." Kevin, objected to qualification of Dr. Singer as an expert, but he offered no meaningful basis for the objection.

We evaluate a trial court's determination on whether to qualify an expert using an abuse of discretion standard. We review a court's evidentiary rulings under an abuse of discretion standard. N.J. Div. of Child Prot. & Permanency

v. N.T., 445 N.J. Super. 478, 492 (App. Div. 2016) (citing State v. Kuropchak, 221 N.J. 368, 385 (2015)). We note that while Kevin's counsel objected to Dr. Singer's qualifications, they placed no substantive argument on the record to support their position. In fact, the record supports the trial court's conclusion. The court had ample support in the record to find Dr. Singer qualified to testify as an expert, and she properly exercised her discretion in doing so.

Finally, Kevin argues that the court should not have considered the report of Dr. Winston as expert testimony, as she did not testify at trial and Kevin, through counsel, did not have the opportunity to confront her through cross-examination. This argument was not raised below, as Kevin admits in his merits brief. We are not bound to consider this argument since it was not raised below. N.J. Div. of Youth & Fam. Servs. v. M.C. III, 201 N.J. 328, 339 (2010). For completeness, we briefly address the argument on its merits.

We reverse discretionary determinations, as with all rulings on the admissibility of evidence, only "when the trial judge's ruling was so wide of the mark that a manifest denial of justice resulted." N.J. Div. of Youth & Fam. Servs. v. M.G., 427 N.J. Super. 154, 172 (App. Div. 2012) (internal quotation marks and citation omitted). Evidentiary rulings not objected to will be reversed only if deemed plain error. R. 2:10-2. Dr. Winston, a psychologist, was the

11

only clinician who was able to perform an in-person psychological evaluation of Kevin. The record shows that Kevin made several admissions to her, including that: at the time of the interview he was charged with possession of controlled substances; he sold cocaine in order to "provide shelter" for his family; and he failed to comply with monthly drug screening or substance abuse treatment because he felt he did not need treatment. Regardless of these concerning admissions, Dr. Winston, after conducting her battery of tests and evaluations, initially recommended a reunification plan for Kevin and Kay in March 2019. Kevin then failed to follow the reunification plan, even abandoning his visits with Kay for the rest of 2019.

The Division did not offer Dr. Winston as a witness in this matter. The trial court admitted her reports into evidence without objection. Given the extensive record developed at trial, including Tanisha Campbell's testimony, which corroborated much of what was in Dr. Winston's reports, we conclude the court's admission of the reports did not lead to an unjust result, and we discern no plain error.

Kevin raises other arguments in his merits brief which were not submitted as point headings on appeal. We find they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

13